**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANTONIO ABREGO ABREGO, et al.
*Plaintiffs-Appellees,*

v.

THE DOW CHEMICAL CO, et al.;
SHELL OIL COMPANY, d/b/a SHELL
CHEMICAL COMPANY, and SHELL
AGRICULTURAL CHEMICAL COMPANY,
*Defendants-Appellants.*

No. 06-55109

D.C. No.
CV-05-03608-RGK

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
March 7, 2006—Pasadena, California

Filed April 4, 2006

Before: M. Margaret McKeown and Marsha S. Berzon,
Circuit Judges, and Samuel P. King,* Senior District Judge.

Per Curiam Opinion

*The Honorable Samuel P. King, Senior United States District Judge
for the District of Hawaii, sitting by designation.

3979

## COUNSEL

Michael L. Brem, Shirrmeister Diaz-Arrastia Brem LLP, Houston, Texas, argued and was on the briefs for the appellants. Gennaro A. Filice, Nicholas D. Kayhan, Richard H. Poulson, Filice Brown Wassa & Mcleod LLP, Oakland, California, were also on the briefs for the appellants.

Howard B. Miller, Girardi & Keese, Los Angeles, California, argued and was on the briefs for the appellees. Walter J. Lack and Elizabeth Lane Crooke, Engstrom Lipscomb & Lack, Los Angeles, California; Thomas V. Girardi, Girardi & Keese, Los Angeles, California; Joe J. Fisher, II, Mark Sparks, and Scott C. Kinsel, Provost Umphrey Law Firm, Beaumont, Texas; and Benton Musslewhite, Law Offices of Benton Musslewhite, Houston, Texas, were also on the briefs for the appellees.

## OPINION

PER CURIAM:

The recently enacted Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4, alters the landscape for federal court jurisdiction over class actions. In addition to traditional class actions, CAFA covers certain other cases involving large numbers of plaintiffs, denominated "mass actions." Dow Chemical Company ("Dow") brings this interlocutory appeal,[1] pursuant to 28 U.S.C. § 1453(c)(1),[2]

---

[1]CAFA provides that "a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class

from the district court's order remanding this purported "mass action."

Dow maintains that under CAFA and contrary to preexisting removal jurisdiction law: (1) plaintiffs bear the burden of refuting the district court's removal jurisdiction; (2) a "mass action" is removable regardless of whether there is jurisdiction over all plaintiffs whose claims are necessary to qualify the action as a mass action; and (3) the district court *must* allow jurisdictional discovery to determine the amount in controversy. The disputes between the parties on these discrete issues reflect a larger disagreement over whether the changes wrought by CAFA generally are limited to those enunciated in CAFA's text, or whether courts should infer a broader transformation of jurisdictional principles than the statutory language indicates.

We hold that CAFA did not shift to the plaintiff the burden of establishing that there is no removal jurisdiction in federal court and that Dow did not meet its burden. We therefore affirm the district court's remand of this action to state court. We save for a later day detailed consideration of CAFA's muddled "mass action" provisions.

## I.

One thousand one hundred and sixty Panamanian banana plantation workers ("the workers") filed a complaint asserting claims stemming from their alleged exposure to 1, 2-dibromo-3-chloropropane ("DBCP"), a chemical pesticide sold under

---

action to the State court from which it was removed if application is made to the court of appeals not less than 7 days after entry of the order." § 1453(c)(1). Dow's petition, made on the seventh day following the entry of the district court's order, was timely and we accepted the appeal. *See Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 685 (9th Cir. 2005) (appeal filed on the seventh day timely under § 1453(c)(1)).

[2]All statutory citations henceforward are to title 28, unless otherwise indicated.

the brand names "Nemagon" and "Fumazone." The operative complaint alleges that although the Environmental Protection Agency banned almost all DBCP use in the United States in 1979, the defendants continued to distribute and use the pesticide on plantations in Panama. The workers allege that they suffered "sterility and other serious injuries" as a result of exposure to the pesticide and seek an unspecified amount of special, general, and punitive damages, pre- and post-judgment interest, and attorneys' fees and costs.

On May 13, 2005, three weeks after the state court suit commenced, Dow filed a notice of removal with the district court and, ten days later, an amended notice of removal, both pursuant to CAFA. Dow invoked § 1332(d)(11), which provides for federal jurisdiction over "mass actions." For the purposes of CAFA, a "mass action" is "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under" § 1332(a). § 1332(d)(11)(B). Section 1332(a), in turn, requires that the amount in controversy exceed $75,000. Under subsection (d)(11)(A), an action that qualifies as a mass action will be "deemed to be a class action removable under . . . [§ 1332(d)(2)-(10)] if it otherwise meets the provisions of those paragraphs." § 1332(d)(11)(A). Prominent among the requirements in these specified paragraphs are that the aggregate amount in controversy must exceed $5,000,000, and that the action must satisfy CAFA's new minimal diversity requirements between plaintiffs and defendants. § 1332(d)(2).

The district court ordered Dow to show cause as to whether "[t]he amount in controversy does not exceed $5,000,000, exclusive of interest and costs, and/or the amount in controversy for each plaintiff does not exceed $75,000." Dow responded, arguing that: (1) CAFA shifted the burden of

establishing whether jurisdiction is proper from the removing defendants to the plaintiffs seeking remand; (2) as long as the action prior to removal involved the claims of more than 100 plaintiffs and more than $5,000,000 in the aggregate, the "mass action" subsection provides for removal jurisdiction and calls for subsequent remand only of the claims of those plaintiffs who do not meet the $75,000 jurisdictional amount requirement; and (3) there should be limited discovery related to the amount in controversy, as "contemplated by Congress in enacting CAFA."

On October 11, 2005, the district court issued a brief remand order:

> [T]he Court finds that Defendant has failed to meet its burden of showing that the action constitutes a "mass action," as defined by the applicable statute (i.e., there are 100 or more plaintiffs over which this court has jurisdiction that can be proposed to be tried jointly). As such, the Court determines that it lacks subject matter jurisdiction over this case, and remands the action to state court.

Dow appeals this order, reasserting the same arguments presented to the district court.

We review a district court's remand order de novo. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194 (9th Cir. 1988); *Ansley v. Ameriquest Mortgage Co.*, 340 F.3d 858, 861 (9th Cir. 2003). Our standard of review regarding requests for jurisdictional discovery related to removed cases is discussed below. *See infra* section II.D.

## II.

## A.

A little over a year ago, CAFA became law, amending, inter alia, § 1332 and adding § 1453 to title 28 of the United

States Code. These new provisions govern this case. To understand them, however, one must first understand the statutory scheme to which they were added. We therefore begin with a review of those background principles and then proceed to describe the amendments.

## 1.

**[1]** Section 1332(a), a preexisting section, vests the district courts with "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" diverse parties as defined by subsections (a)(1)-(4). § 1332(a).[3] Although the statute does not so require explicitly, the Supreme Court has repeatedly held, and recently reiterated, that § 1332(a) requires complete diversity, whereby "[i]n a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, ___ U.S. ___, 125 S. Ct. 2611, 2617 (2005) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 375 (1978)).

---

[3]Section 1332(a) provides, in relevant part:

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between —

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States

§ 1332(a)(1)-(4).

Under § 1441, another preexisting section, "civil action[s] brought in a State court of which the district courts of the United States have original jurisdiction," may be removed by the defendant or defendants to federal district court. § 1441(a);[4] *accord Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002) ("Under the plain terms of § 1441(a), in order properly to remove [an] action pursuant to that provision, petitioners must demonstrate that original subject-matter jurisdiction lies in the federal courts."). Cases removed from state court under § 1441 are ordinarily subject to a stricter diversity standard than applies where original federal jurisdiction is invoked:

> While § 1332 allows plaintiffs to invoke diversity jurisdiction, § 1441 gives defendants a corresponding opportunity. . . . The scales are not evenly balanced, however. An in-state plaintiff may invoke diversity jurisdiction, but § 1441(b) bars removal on the basis of diversity if any "part[y] in interest properly joined and served as [a] defendan[t] is a citizen of the State in which [the] action is brought.

---

[4]More fully, § 1441 provides:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

§ 1441(a), (b).

*Lincoln Property Co. v. Roche*, ___ U.S. ___, 126 S. Ct. 606, 613 (2005) (alterations in original) (quoting § 1441(b)). In addition, all defendants must agree to removal, *see United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) ("[T]he usual rule is that all defendants in an action in a state court must join in a petition for removal . . . ."), and removal must occur within one year of the commencement of the action, § 1446(b).

## 2.

**[2]** Section 1332(d), added by CAFA, vests the district court with "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" the parties satisfy, among other requirements, minimal diversity.[5] Section 1332(d) thus abandons the complete diversity rule for covered class actions. *See Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 684 (9th Cir. 2005) (noting that § 1332(d) requires only "minimal diversity").

Of particular import here, § 1332(d) does not apply only to traditional class actions. Section 1332(d)(11)(A), provides that "[f]or purposes of this subsection and section 1453, a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs."[6] The wording of this subsec-

---

[5]One way to satisfy minimal diversity is by demonstrating that "any member of a class of plaintiffs is . . . a citizen or subject of a foreign state and any defendant is a citizen of a State." § 1332(d)(2), (d)(2)(B). The first amended complaint alleges that each plaintiff is and was, at all relevant times, a resident of Panama.

[6]Section 1332(d) imposes a range of requirements for class action jurisdiction, *see* § 1332(d)(2)-(10), from excluding cases in which two-thirds or more of the proposed plaintiffs and the primary defendant are citizens of the state where the action is brought, § 1332(d)(4)(B), to the provision that CAFA applies to class actions both before and after class certification, § 1332(d)(8). A "mass action" must satisfy each of these requirements and

tion is clumsy. On its face, § 1332(d)(2)-(10) vests the district courts with *original* jurisdiction over certain class actions, *see* § 1332(d)(2) ("The district courts shall have *original jurisdiction* . . . ."), but subsection (d)(11)(A) refers to actions "*removable* under paragraphs (2) through (10)" (emphasis added).

The confusion is not alleviated by the statutory reference to "mass action," which reads:

> [A]ny civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

§ 1332(d)(11)(B)(i). To "otherwise meet[ ]" the provisions of § 1332(d) "paragraphs (2) through (10)," the amount placed into controversy by a mass action must — when the "claims of the individual class members [are] . . . aggregated" — exceed $5,000,000, exclusive of interests and costs. § 1332(d)(2), (6). The statute does not explain the relationship between the 100 or more persons and $5,000,000 aggregate amount in controversy requirement on the one hand, and the limitation of jurisdiction to "those plaintiffs whose claims in a mass action satisfy [in excess of $75,000] jurisdictional amount requirement," on the other.

---

processes. Some of these provisions in § 1332(d)(2)-(10), however, make no sense in the context of a mass action, which is not subject, for example, to class certification requirements. For simplicity, the present discussion focuses mainly on the most prominent requirements of § 1332(d)(2)-(10) shared by both mass actions and class actions — the aggregate $5,000,000 amount in controversy and minimal diversity requirements set forth in § 1332(d)(2).

The final CAFA amendment relevant here is § 1453, which addresses the removal of class actions. Section 1453(b) exempts qualifying actions from the § 1446(b) prohibition of removal "more than 1 year after commencement of the [state court] action,"[7] and overrides the judge-created requirement that each defendant consent to removal, *see Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1267 (9th Cir. 1999) (holding that "[t]he case was improperly removed because not all defendants consented to the removal" as required by § 1446); *Parrino v. FHP, Inc.*, 146 F.3d 699, 703 (9th Cir. 1998) ("All defendants must join a notice of removal . . . ."). Section 1453(b), moreover, unlike § 1441, allows for removal of actions "without regard to whether any defendant is a citizen of the State in which the action is brought." *Compare* § 1453(b) *with* § 1441(b) (prohibiting removal based on diversity in such instances).

## 3.

Meshing the existing jurisdiction and removal statutory sections with the CAFA "mass action" amendments is far from straightforward. The confusion revolves around the defi-

---

[7]Section 1446(b), in relevant part, provides:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

Section 1453(b), largely incorporating the procedure set out in § 1446, provides:

> A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(b) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants.

nition of a "mass action" and the relationship of the individual jurisdictional requirement of § 1332(a) to that definition. The problem is best illustrated by looking at the text of the statute:

> [T]he term "*mass action*" means any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, *except that jurisdiction* shall exist only over those plaintiffs whose claims in a *mass action* satisfy the jurisdictional amount requirements under [§ 1332(a)].

§ 1332(d)(11)(B)(i) (emphases added). Is the proviso part of the definition of "mass action" or an independent provision? The mystery deepens when considering how the individual jurisdictional requirement relates to § 1332(d)(2)-(10): What happens if individual remands under the § 1332(a) proviso bring the aggregate amount in controversy below $5,000,000, or the number of plaintiffs below 100, or destroys minimal diversity? The text of the statute does not specify whether each of these requirements looks to "plaintiffs in a mass action" or to "plaintiffs in a mass action over whom the district court has jurisdiction." Finally, Congress's use of the word "removable" in the text of § 1332, a statute establishing original jurisdiction, blurs what had previously been a clear distinction between jurisdiction and removal statutes, and thus obscures the reach of jurisdiction over mass actions. Because Congress did not refer to original jurisdiction in either the mass action provision itself, or in § 1453, the text does not answer the important question of when there is original federal jurisdiction over mass actions, and what the scope of that original jurisdiction might be. This gap casts into doubt the interaction between the mass action provision and a host of other statutes that assume original jurisdiction as a starting point. *See, e.g.*, § 1367 (providing, "in any civil action of which the district courts have original jurisdiction," for supplemental jurisdiction over related claims that do not indepen-

dently meet jurisdictional requirements); § 1441 (providing for removal to federal court of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction").

It is against this complex background that Dow stakes out its position that (1) CAFA shifted the burdens normally applicable in the removal context; (2) under CAFA's mass action provisions, removed mass actions remain in federal court even if the plaintiffs alleging claims in excess of $75,000 do not meet the numerosity or aggregate total amount in controversy requirement of § 1332(d); and (3) CAFA *requires* the district court to allow post-removal jurisdictional discovery. Because we disagree with Dow's position on the first and third issues, we have no reason, on the facts of this case, to resolve the second, and thorniest, question, and do not do so.

## B.

[3] In cases removed from state court, the removing defendant has "always" borne the burden of establishing federal jurisdiction, including any applicable amount in controversy requirement. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met. *Id.* at 566-67; *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("Under this burden, the defendant must provide evidence that it is 'more likely than not' that the amount in controversy" satisfies the federal diversity jurisdictional amount requirement.).[8] The district court here followed this rule, stating in its

---

[8]In this circuit, this standard applies only if the state court complaint does not specify the amount sought as damages. If the complaint filed in state court alleges damages in excess of the required federal jurisdictional amount, remand is warranted only if it appears to a "legal certainty" that the claim is actually for less than the jurisdictional minimum. *See Sanchez*,

remand order that "Defendant has failed to meet its burden." Dow maintains, as it did before the district court, that CAFA reverses long-standing law by requiring the plaintiffs, as the parties seeking remand, to refute the existence of jurisdiction.

Dow points to no language in CAFA to support its argument. That is not surprising for, as the Seventh Circuit noted in rejecting the position Dow supports, there simply is no such language in the statute regarding the burden as to remand. *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005) (noting that none of CAFA's language "is even arguably relevant" to this burden-shifting argument).

**[4]** Instead, Dow relies on language from a Senate Judiciary Committee Report (the "Committee Report"), issued ten days after CAFA's passage into law, which states: "If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional requirements are not satisfied)." S. Rep. No. 109-14, at 42 (Feb. 28, 2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 40. Dow is correct that consideration of legislative history is appropriate where statutory language is ambiguous. Ambiguity, however, is at least a necessary condition. *See Exxon Mobil*, 125 S. Ct. at 2626 ("Extrinsic mate-

---

102 F.3d at 402; *see also St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (stating that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith" and that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal"). If the complaint alleges damages of less than the jurisdictional amount, "more difficult problems are presented," 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3725 at 84 [hereinafter Fed. Prac. & Proc.], as to which there is no binding precedent in this circuit. As we are not presented with the question of the appropriate standard in such a case, we reach no resolution here.

rials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms."); *Garcia v. United States*, 469 U.S. 70, 76 n.3 (1984) (" 'Resort to legislative history is only justified where the face of the Act is inescapably ambiguous . . . .' " (quoting *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395-96 (1951) (Jackson, J., concurring)).

**[5]** In this instance, the statute is not ambiguous. Instead, it is entirely silent as to the burden of proof on removal. Faced with statutory silence on the burden issue, we presume that Congress is aware of the legal context in which it is legislating. *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 696-97 (1979) ("It is always appropriate to assume that our elected representatives, like other citizens, know the law . . . ."); *United States v. LeCoe*, 936 F.2d 398, 403 (9th Cir. 1991) ("Congress is, of course, presumed to know existing law pertinent to any new legislation it enacts.").

In *Cannon*, the Supreme Court held that section 901 of Title IX of the Education Amendments of 1972 authorized an implied private right of action. 441 U.S. at 689. In reaching its conclusion, the Court considered the nearly identical language of Title VI, which had been construed by courts as creating a private right of action, although there was no express language to that end, and noted that "it is not only appropriate but also realistic to presume that Congress was throughly familiar with these unusually important precedents from this and other federal courts and that it expected its enactment to be interpreted in conformity with them." *Id.* at 696-99. The observation in *Cannon* applies with equal force here.

**[6]** The legal context in which the 109th Congress passed CAFA into law features a longstanding, near-canonical rule that the burden on removal rests with the removing defendant. *See Gaus*, 980 F.2d at 566-67; *Sanchez*, 102 F.3d at 402. More generally, "[i]t is to be presumed that a cause lies out-

side [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

**[7]** As we have noted, CAFA contains a series of modifications of existing principles of federal subject matter jurisdiction, both statutory and judge-created. CAFA thus evidences detailed appreciation of the background legal context. Given the care taken in CAFA to reverse *certain* established principles but not others, the usual presumption that Congress legislates against an understanding of pertinent legal principles has particular force.

**[8]** Certain aspects of CAFA, it is true, evidence Congress's intent that the district courts' jurisdiction vis-a-vis certain kinds of actions be broadened rather than restricted. For example, under § 1332(d)(6), the claims of class members are aggregated to determine whether the amount in controversy exceeds $5,000,000; under § 1332(d)(2)(A) requires only minimal diversity, not complete diversity; under § 1332(d)(10), "an unincorporated association [is] . . . deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized," which departs from the rule that frequently destroys diversity jurisdiction, that "a limited partnership's [or unincorporated association's] citizenship for diversity purposes can be determined only by reference to all of the entity's members," *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1182 (9th Cir. 2004) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 196-97 (1990)); and under § 1453(b), a class action may be removed "without regard to whether any defendant is a citizen of the State in which the action is brought [and] . . . such action may be removed by any defendant without the consent of all defendants," and the one year time limit for removal set forth in § 1446(b) does not apply. Rather than convincing us that CAFA, by way of implication alone, shifted the burden of proof on removal, we conclude that these broadening provi-

sions indicate that Congress carefully inserted into the legislation the changes it intended and did not mean otherwise to alter the jurisdictional terrain.

One district court that inferred that the burden had shifted noted "with some irony, that [as with CAFA,] the original diversity statute does not contain any reference to the burden of proof" applicable to actions removed from state court. *Berry v. Am. Express Publ'g, Corp.*, 381 F. Supp. 2d 1118, 1123 (C.D. Cal. 2005). The observation is correct, but not the inference drawn from it. It is the courts, not the legislature, that have long imposed the burden of proof on the removing party. *See* 14B FED. PRAC. & PROC. § 3721 at 324-31 (collecting cases); *see also Brill*, 427 F.3d at 448 ("The rule that the proponent of federal jurisdiction bears the risk of non-persuasion has been around for a long time.").

The traditional rule of burden allocation in determining removal jurisdiction was meant to comport with what the Supreme Court has termed "[t]he dominant note in the successive enactments of Congress relating to diversity jurisdiction," that is, "jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to the state courts' in order to keep them free for their distinctive federal business." *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 76 (1941); *see Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941) (noting that "[n]ot only does the language of the Act of 1887 evidence the Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation"). This rule of restriction extends to removal jurisdiction, especially insofar as it is based on the diversity jurisdiction of the federal courts. *See Syngenta Crop Prot.*, 537 U.S. at 32 ("The right of removal is entirely a creature of statute and 'a suit commenced in a state court must remain there until cause is shown for its transfer under some

act of Congress.' These statutory procedures for removal are to be strictly construed." (internal citation omitted)); *Gaus*, 980 F.2d at 566 ("The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."); *see also Gould v. Mutual Life Ins. Co. of N.Y.*, 790 F.2d 769, 773 (9th Cir. 1986) ("Removal jurisdiction is statutory and strictly construed.").

**[9]** We therefore hold that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction. In *Brill*, the Seventh Circuit — the only circuit that has addressed the burden of proof question under CAFA — came to the same conclusion. *Brill* emphasized that the single passage of legislative history upon which Dow now relies, "does not concern any text in the bill that eventually became law." 427 F.3d at 448. Speaking through Judge Easterbrook, *Brill* explained:

> [W]hen the legislative history stands by itself, as a naked expression of "intent" unconnected to any enacted text, it has no more force than an opinion poll of legislators — less, really, as it speaks for fewer. Thirteen Senators signed this report and five voted not to send the proposal to the floor. Another 82 Senators did not express themselves on the question; likewise 435 Members of the House and one President kept their silence. . . . [N]aked legislative history has no legal effect . . . . The rule that the proponent of federal jurisdiction bears the risk of non-persuasion has been around for a long time. To change such a rule, Congress must enact a statute with the President's signature (or by a two-thirds majority to override a veto). A declaration by 13 Senators will not serve.

*Id.* at 448; *see Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 617 (1991) (citing to *Pub. Employees Ret. Sys. of Ohio v. Betts*,

492 U.S. 158, 168 (1989), for the proposition that "legislative history that cannot be tied to the enactment of specific statutory language ordinarily carries little weight in judicial interpretation of the statute").

We join our sister circuit and hold that CAFA's silence, coupled with a sentence in a legislative committee report untethered to any statutory language, does not alter the long-standing rule that the party seeking federal jurisdiction on removal bears the burden of establishing that jurisdiction.

## C.

We now turn to the merits of the jurisdictional question — that is, whether Dow has established that the workers' action is a "mass action" removable under §§ 1332 and 1453. We conclude that under *any* formulation of the bewildering language of § 1332(d)(11)(B)(i), remand was proper because Dow has failed to meet its burden to establish jurisdiction over even one plaintiff. We therefore need not and do not endorse any particular construction of the mass action provisions of § 1332(d)(11).

Dow maintains that "CAFA expands the district court's *removal* jurisdiction to include actions where the aggregate amount in controversy exceeds $5,000,000, but leaves in place the rule that the court's *subject matter* jurisdiction extends only to those individual plaintiffs who are seeking at least $75,000." On this view, a case in which the aggregate amount in controversy is more than $5,000,000 and which involves in state court more than 100 plaintiffs proposed to be tried together may be removed as a mass action. The claims of any plaintiffs with damages less than $75,000 would then be subject to remand for want of subject matter jurisdiction.

Dow's interpretation of the statute rests upon the conclusion that the mass action provision is ambiguous and is part of a statutory scheme that hardly qualifies as "coherent and

consistent," *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997), alongside a "clearly expressed legislative intention" that gives shape to key provisions in the statute, *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). Under this view, the mass action provision falls within the rule that "[e]xtrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Exxon Mobil*, 125 S. Ct. at 2626.

Dow urges that the Committee Report addresses the problematic clause directly.

> Subsequent remands of individual claims not meeting the section 1332 jurisdictional amount requirement may take the action below the 100-plaintiff jurisdictional threshold or the $5 million aggregated jurisdictional amount requirement. . . . [But,] so long as the mass action met the various jurisdictional requirements at the time of removal, it is the Committee's view that those subsequent remands should not extinguish federal diversity jurisdictional [sic] over the action.

S. Rep. 109-14, at 47, 2005 U.S.C.C.A.N. at 44. This clarification is consistent with a logical reading of the statute, as a committee report is entitled to considerably greater weight than comments made during floor debate. *Cf. Garcia*, 469 U.S. at 76 (eschewing reliance on "snippets" such as "passing comments of one Member" and "casual statements from the floor debates" in favor of committee reports on the bill, which "represent the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation"); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1082 (9th Cir. 1999) ("This circuit relies on official committee reports when considering legislative history, not stray comments by individuals or other materials unrelated to the statutory language or the committee reports.").

In sum, relying on this legislative history, Dow urges that a "mass action" be defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact," § 1332(d)(11)(B)(i), and removable from state court to federal court if it "otherwise meets the provisions of" paragraphs § 1332(d)(2)-(10), including the $5,000,000 aggregate amount in controversy requirement and minimal diversity. § 1332(d)(11)(A). Once in federal court, the court would exercise jurisdiction only over those plaintiffs whose individual claims meet the $75,000 threshold. Remands of individual claims under $75,000 might take the action below 100 plaintiffs and $5,000,000, but would not extinguish federal jurisdiction over the existing mass action.

The workers' reading of § 1332(d)(11), in contrast, is grounded in the understanding that § 1332(d) is, in general, a grant of original jurisdiction to the district court, and stresses that the "except" clause provides that "*jurisdiction* shall *exist* only over those plaintiffs whose claims in a mass action satisfy the [in excess of $75,000] jurisdictional amount." § 1332(d)(11)(B)(i) (emphasis added). On this view, the jurisdictional limitation to plaintiffs asserting claims in excess of $75,000 is applicable at the time of removal and to the action as a whole. Both original and removal jurisdiction, then, would depend on establishing § 1332(a) jurisdiction over *each* plaintiff's claims, as well as on meeting the "mass action" requirements with regard to the plaintiffs over whom there is original jurisdiction. *See* § 1441(a); *Syngenta Crop Prot.*, 537 U.S. at 33; *Snow v. Ford Motor Co.*, 561 F.2d 787, 789 (9th Cir. 1977) ("[I]n the absence of a specific statutory exception, a federal court can exercise removal jurisdiction over a case only if it would have had jurisdiction over it as originally brought by the plaintiff."), *superseded on other grounds by* § 1332(d)(6). This position acknowledges the ambiguity of the statutory language. It stresses, however, that the legislative history Dow relies upon is entitled to exceptionally little

weight, because it was, as noted by the minority views in the Committee Report, S. Rep. No. 109-14, at 79, 2005 U.S.C.C.A.N. at 73, not available for consideration or discussion before enactment of CAFA.[9]

The workers also urge that Dow's interpretation of the statute disregards the purposes of the "mass action" provision. Dow's interpretation, the workers maintain, could leave in federal court an action with very few plaintiffs, while remanding the "mass" part of the mass action. This result, the workers argue, conflicts with the reason "mass actions" were added to the statute — that they closely resemble the large class actions of national importance to which the statute otherwise applies. *See* CAFA, § 2(b)(2), Pub. L. 109-14 at 5 (noting that CAFA was intended to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction").

Resolving which of these two positions is correct is not necessary in this case. To paraphrase the Supreme Court:

> [CAFA] has made some radical changes in the law regulating [jurisdiction and] removals. Important questions of practice are likely to arise under it, which, until the statute has been longer in operation, it will not be easy to decide in advance. For the pres-

---

[9]There is some history, from a previous Congress, indicating that the except clause was added as a compromise after the failure of a cloture vote, *see* S. Rep. No. 109-14, at 2, 2005 U.S.C.C.A.N at 4, to make the mass actions operate more like individual actions, presumably by imposing, as in individual actions, a $75,000 jurisdictional amount requirement for each individual claim making up the mass action. *See* 149 Cong. Rec. S16102, 16102-03 (Dec. 9, 2003) (statement of Sen. Dodd & Ex. 1) (noting that "S. 1751 would have treated all mass actions involving over 100 claimants as if they were class actions. . . [,] [but that] [t]he compromise makes several changes to treat mass actions more like individual cases than like class actions when appropriate.").

ent, therefore, we think it best to confine ourselves to the determination of the precise question presented in any particular case, and not to anticipate any that may arise in the future.

*Gold Washing & Water Co. v. Keyes*, 96 U.S. 199, 204 (1877) (discussing an 1875 statute providing for removal of cases "arising under the Constitution or laws of the United States"). Regardless of the correct construction of the "mass action" provisions, we conclude, Dow has not carried its burden of establishing jurisdiction on removal.

[10] We start with the pleadings filed in state court. The operative complaint prays for pre- and post-judgment interest, attorney's fees and costs, and relief in the form of special, general, punitive, and exemplary damages,

> due and awardable pursuant to the actions of Defendants . . . including fraud and deceit, wanton and reckless acts of commission and omission, and outrageous malicious conduct, in an amount in favor of each Plaintiff, as a multiple of each Plaintiff's compensatory damages, all totaled to an amount sufficient to punish said Defendants so as to deter it and others like it from similar wrongdoing.

While the complaint seeks no specific amount in damages,[10] it is pled as an "unlimited civil case," for which the amount in controversy exceeds $25,000. *See* CAL. CIV. PROC. CODE § 88 ("A civil action or proceeding other than a limited civil case may be referred to as an unlimited civil case.");

---

[10]In this respect, the workers' pleading is consistent with California Code of Civil Procedure section 425.10, which provides that "where an action is brought to recover actual or punitive damages for personal injury or wrongful death, the amount demanded shall not be stated." CAL. CIV. PROC. CODE § 425.10(b) (West 2006) (The current section 425.10 became effective on January 1, 2006, but the quoted language was contained in the prior version as well).

§ 422.30(b) ("In a limited civil case, the caption shall state that the case is a limited civil case . . . ."); *Stern v. Superior Court*, 105 Cal. App. 4th 223, 233 (2003) (noting that to reclassify an unlimited civil case as a civil case, "[t]he trial court must reasonably determine that the verdict will 'necessarily' fall short of the $25,001 required for an unlimited civil case"). Moreover, the first amended complaint alleges that "[w]ithout reference to punitive damages, the amount in controversy in compensatory damages for *each* plaintiff exceeds the minimum jurisdictional limits of this Court, exclusive of interests and costs" (emphasis added). The amount in controversy, therefore, is at least $25,000 per plaintiff or, given 1,160 plaintiffs, at least $29,000,000, an amount which clearly satisfies the jurisdictional amount requirement of § 1332(d)(2). Dow is thus correct that it is "more likely than not" that, aggregated, the workers seek an amount in excess of $5,000,000, as required by § 1332(d)(2).

**[11]** Dow, however, has not established that even *one* plaintiff satisfies the $75,000 jurisdictional amount requirement of § 1332(a), applicable to mass actions by virtue of § 1332(d)(11)(B)(i). Although, as noted, we do not decide whether this case could go forward if only one or a few plaintiffs are within the category over whom "jurisdiction shall exist," we do conclude — as should be obvious — that the case cannot go forward unless there is *at least* one plaintiff whose claims can remain in federal court.

Dow's Amended Notice of Removal alleges:

> A review of plaintiffs' complaint indicates that the total "matter in controversy [at the time of removal] exceeds the sum or value of $5,000,000, exclusive of interests and costs," 28 U.S.C. § 1332(d)(2), and further indicates that the matter in controversy at the time of removal for each plaintiff "exceeds the sum or value of $75,000."

. . .

> v. Given the nature of the injuries claimed by Plaintiffs and the request for punitive damages as a multiple of each plaintiff's compensatory damages, this Court has jurisdiction over *each and every plaintiff* because each plaintiff satisfies the "jurisdictional amount requirements under subsection(a)." 28 U.S.C. § 1332(d)(11)(B)(i).

(emphasis added) (alteration in original).

As we stated in *Gaus*, such allegations, "although attempting to recite some 'magical incantation,' neither overcome[ ] the 'strong presumption' against removal jurisdiction, nor satisf[y] [Dow]'s burden of setting forth, in the removal petition itself, the *underlying facts* supporting its assertion that the amount in controversy exceeds" $75,000. 980 F.2d at 567; *see also Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) ("[R]emoval 'cannot be based simply upon conclusory allegations' where the ad damnum is silent." (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)).[11]

Dow's response to the district court's order to show cause offered the district court no further factual basis upon which to determine that it was "more likely than not" that *any* plaintiff's claim satisfies the $75,000 jurisdictional requirement. *See Sanchez*, 102 F.3d at 404. Dow instead opted to argue that "there is no requirement that the removing party has to show that *each* of the workers' claims exceeds $75,000," asserting, as they do here, that "CAFA expressly contemplates that, after removal, some members of a mass action or putative class may be remanded because they are not making claims

---

[11]Dow's original Notice of Removal contains a similar recitation of the statutory requirements and is less illuminating than its successor.

of at least $75,000, while providing for jurisdiction over those that do."

**[12]** Resting on this theory, however, does not establish that the district court properly has jurisdiction over this matter. If Dow's reading of § 1332(d)(11) is correct, it has still failed to establish that the claims made by *any single plaintiff* satisfy § 1332(a); accordingly remand of each and every plaintiff to state court was appropriate.[12] Under the alternative reading of the statute, it is equally apparent that the requirements of § 1332(d)(11) are not satisfied, as there are not 100 plaintiffs over whom the district court would have jurisdiction pursuant to § 1332(a) and (d)(2) — indeed, there are not *any* — and the district court properly remanded for lack of subject matter jurisdiction. *See Gaus*, 980 F.2d at 566 ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

### D.

Dow argues, however, that the district court improperly remanded the action to state court without allowing limited jurisdictional discovery as contemplated by CAFA's legislative history and the "well-settled law of this circuit." In its response to the order to show cause, Dow suggested that it be allowed to "serve a single request for admission to each plaintiff asking simply: 'Admit or deny that, in this lawsuit, you are seeking at least $75,000 in damages.' "

In *Singer*, we described "the appropriate procedure for determining the amount in controversy on removal" as follows:

The district court may consider whether it is "fa-

---

[12]To the extent our analysis turns on the availability of post-removal discovery regarding the jurisdictional amount, we resolve that issue in the next section.

cially apparent" from the complaint that the jurisdictional amount is in controversy. If not, the court may consider facts in the removal petition, and may "require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal."

116 F.3d at 377 (quoting *Allen*, 63 F.3d at 1335-36); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (stating the same principles and noting that "[i]n determining the amount in controversy, the district court properly considered [plaintiff's] interrogatory answers and emotional distress damage awards in similar age discrimination cases in Washington").

The plaintiff in *Singer* had filed an action in state court that, pursuant to California Code of Civil Procedure § 425.10(b), did not state a specified sum in the claim for relief. *Singer*, 116 F.3d at 374. The action was removed. On the motion to remand, the plaintiff "expressly conceded" that the amount in controversy exceeded the jurisdictional requirement, then $50,000. *Id.* The district court denied the motion to remand and later issued judgment in favor of the defendant. *Id.* at 375. We affirmed the district court's decision, noting that the court properly exercised its discretion in accepting the judicial admission regarding the amount in controversy. *Id.* at 376. We explained:

> Where the plaintiff filed the case in state court, and did not seek the federal forum, then the plaintiff's formal judicial admission . . . has the effect of defeating the plaintiff's choice of forum. In this context, where state law prohibited plaintiff from stating the amount in controversy in the complaint, the *district court has discretion to accept the admission as establishing it*. Otherwise we would be adopting the illogical position that a plaintiff can establish the amount in controversy by an ad damnum, but not by

a formal admission against the plaintiff's interest in choice of forum.

*Id.* (emphasis added).

Based on *Singer*, it is clearly appropriate for the district courts, in their discretion, to accept certain post-removal admissions as determinative of the amount in controversy. No such admission, however, has been made here.

**[13]** In a more recent case, we observed that "some courts have suggested that it may be appropriate to allow discovery relevant to jurisdictional amount prior to remanding." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001) (citing *McCraw v. Lyons*, 863 F. Supp. 430, 435 (W.D. Ky. 1994)); *see also McCraw*, 863 F. Supp. at 435 ("Interrogatories may be propounded at the same time that the petition for removal is filed. If Plaintiff seeks remand, Defendant may request that the Court delay a decision pending completion of limited discovery."). Our decisions do not, however, indicate that such discovery is *required.* Indeed, we have previously held that "[a]n appellate court will not interfere with the trial court's refusal to grant [jurisdictional] discovery except upon the clearest showing that the dismissal resulted in actual and substantial prejudice to the litigant . . . ." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 566 F.2d 406, 430 n.24 (9th Cir. 1977).

The deference owed to district courts in managing jurisdictional discovery is tempered by concern regarding the time pressure imposed by the general removal provisions of § 1446(b). This concern does not plague us here, as the parties in this case will not be prejudiced in their opportunity to develop the record with regard to the amount in controversy by return to state court. Under CAFA, class actions and mass actions may be removed at any point during the pendency of litigation in state court, so long as removal is initiated within thirty days after the defendant is put on notice that a case

which was not removable based on the face of the complaint has become removable. *See* § 1446(b) (setting forth the one-year limitation); § 1453(b) (one-year time limitation of § 1446(b) does not apply to the removal of class actions); § 1332(d)(11)(A) (mass actions are to be treated as class actions under § 1453).

Moreover, by lifting the one year bar, CAFA clearly contemplates that state courts may be burdened, for longer than was previously possible, with cases that ultimately will be removed. *Cf. Harris v. Bankers Life & Casualty Co.*, 425 F.3d 689, 697 (9th Cir. 2005) ("We are unpersuaded by the argument that a predictable rule will result in strategic delay in removal, thereby burdening the state courts with a case that will ultimately be removed."). As a result, there is also sufficient time to develop in state court the facts necessary to support federal jurisdiction. Also, as state court class action and mass action plaintiffs now run the risk that their case can be removed at any stage of the litigation, there is no longer an incentive for them to remain cagey about the amount in controversy until the one-year window of § 1446(b) has closed.

**[14]** Finally, in *Harris*, we emphasized the importance of "guard[ing] against premature and protective removals and minimiz[ing] the potential for a cottage industry of removal litigation." 425 F.3d at 698. Dow removed this action to district court a mere seven days after the workers filed their First Amended Complaint, and less than a month after the case was filed. Once in federal court, Dow failed to present to the district court any pleading, evidence, or admission that establishes that it is more likely than not that jurisdiction lies. On these facts, it is well within the court's discretion to remand to state court rather than ordering jurisdictional discovery, with the knowledge that later-discovered facts may prompt a second attempt at removal. Doing so avoids encouraging the sort of premature removal presented to us here. *See Harris*, 425 F.3d at 698 ("By assuring that removal occurs once the jurisdictional facts supporting removal are evident, we also

ensure respect for the jurisdiction of state courts."). We there-
fore hold that the district court did not abuse its discretion
under CAFA by declining to order jurisdictional discovery in
this case.

   CAFA's legislative history does not alter our conclusion. In
arguing that the district court must provide for jurisdictional
discovery, Dow points us to yet another portion of the same
Senate Judiciary Committee Report, which states:

> The Committee understands that in assessing the
> various criteria established in all these new jurisdic-
> tional provisions, a federal court may have to engage
> in some fact-finding, not unlike what is necessitated
> by the existing jurisdictional statutes. The Commit-
> tee further understands that in some instances, lim-
> ited discovery may be necessary to make these
> determinations. *However, the Committee cautions
> that these jurisdictional determinations should be
> made largely on the basis of readily available infor-
> mation. Allowing substantial, burdensome discovery
> on jurisdictional issues would be contrary to the
> intent of these provisions to encourage the exercise
> of federal jurisdiction over class actions.*

S. Rep. No. 109-14, at 44, 2005 U.S.C.C.A.N. at 42 (empha-
sis added). This statement is untethered to any statutory lan-
guage. Moreover, this passage confirms that any decision
regarding jurisdictional discovery is a discretionary one, and
is governed by existing principles regarding post-removal
jurisdictional discovery, including the disinclination to enter-
tain "substantial, burdensome discovery on jurisdictional
issues." Applying those established principles, the district
court's refusal to accept the proposal that 1,160 plaintiffs
located in and around Panama answer contention interrogato-
ries while the case is otherwise put on hold was not an abuse
of discretion.

## III.

Nothing in CAFA's language purports to shift the burdens normally applied to removal of a state action to federal court. Dow has failed to meet its burden in demonstrating that the jurisdictional requirements of CAFA are satisfied. For these reasons, we affirm the district court's remand of this action to state court.

**AFFIRMED.**