Hon. Dana M. Sabraw, United States District Judge
Pending before the Court is Plaintiff John Bryant's motion to remand. Defendant NCR Corporation filed an opposition. Plaintiff did not file a reply. For the following reasons, the motion is denied.
I.
BACKGROUND
Plaintiff was formerly employed by Defendant as a customer engineer. On November 13, 2017, Plaintiff, individually and *1149 on behalf of all other similarly situated California employees, commenced the present action against Defendant in the San Diego County Superior Court. The Complaint alleges seven claims for relief: (1) unfair business practices, in violation of Cal. Bus. & Prof. Code § 17200 et seq., (2) failure to pay minimum and overtime wages, in violation of Cal. Labor Code §§ 1194 and 1194.2, (3) failure to provide meal periods, in violation of Cal. Labor Code §§ 226.7 and 512 and the applicable IWC Wage Order, (4) failure to provide rest periods, in violation of Cal. Labor Code § 226.7 and the applicable IWC Wage Order, (5) failure to provide accurate itemized wage statements, in violation of Cal. Labor Code § 226, (6) failure to timely pay wages, in violation of Cal. Labor Code §§ 201 and 202, and (7) wrongful termination, in violation of public policy. The proposed class is defined as "all hourly, non-exempt, customer engineers ... employed by [Defendant] within the State of California at any time during the period from four years prior to the filing of this Complaint up through the present[.]" (Compl. ¶ 9.)
On December 18, 2017, Defendant removed the case to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and diversity jurisdiction under 28 U.S.C. § 1332(a). In response to the Notice of Removal, Plaintiff filed the present motion, arguing Defendant has failed to satisfy its burden of establishing the class claims exceed the $5,000,000 jurisdictional minimum under CAFA and Plaintiff's individual claims exceed the $75,000 minimum for diversity jurisdiction.
II.
LEGAL STANDARD
CAFA provides "original jurisdiction" to the federal district courts to hear a "class action" if the class has more than 100 members, the parties are minimally diverse, and the matter in controversy "exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2) & (5)(B). A class action that meets CAFA standards may be removed to federal court. 28 U.S.C. § 1441(a). Unlike the general presumption against removal, "no antiremoval presumption attends cases invoking CAFA." Dart Cherokee Basin Operating Co., LLC v. Owens , --- U.S. ----, 135 S.Ct. 547, 554, 190 L.Ed.2d 495 (2014). In fact, Congress intended CAFA jurisdiction to be "interpreted expansively." Ibarra v. Manheim Investments, Inc. , 775 F.3d 1193, 1197 (9th Cir. 2015).
Under CAFA, the burden of establishing removal jurisdiction rests on the removing party. Washington v. Chimei Innolux Corp. , 659 F.3d 842, 847 (9th Cir. 2011) (citing Abrego Abrego v. The Dow Chem. Co. , 443 F.3d 676, 685 (9th Cir. 2006) ). A removing defendant need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold, and the defendant's amount in controversy allegation should be accepted if not contested by the plaintiff or questioned by the court. Owens , 135 S.Ct. at 554. If, however, "a defendant's assertion of the amount in controversy is challenged ... both sides submit proof and the court decides, by a preponderance of the evidence whether the amount-in-controversy requirement has been satisfied." Id. (citing 28 U.S.C. § 1446(c)(2)(B) ); Rodriguez v. AT & T Mobility Servs. LLC , 728 F.3d 975, 978 (9th Cir. 2013). Under the preponderance of the evidence standard, a defendant must establish "that the potential damage could exceed the jurisdictional amount." Rea v. Michaels Stores Inc. , 742 F.3d 1234, 1239 (9th Cir. 2014) (quoting Lewis v. Verizon Commc'ns, Inc. , 627 F.3d 395, 397 (9th Cir. 2010) ).
*1150 III.
DISCUSSION
Here, there is no dispute the present action is a "class action" under CAFA, as the action contains class allegations under California Code of Civil Procedure § 382. There is also no dispute that the action involves more than 100 employees, and that minimal diversity exists-the citizenship of at least one of the employees is different from Defendant's citizenship. The only issue, therefore, is whether Defendant has shown by a preponderance of the evidence that the amount in controversy requirement is satisfied. For reasons explained below, the Court finds Defendant has shown by a preponderance of the evidence that the amount in controversy exceeds $5,000,000, and thus, remand is inappropriate.[1]
In support of the Notice of Removal, Defendant submitted a declaration of Marina Hall, its HR Consultant, setting out the figures it had used to calculate an amount in controversy exceeding $5,000,000. Ms. Hall attested to Plaintiff's average hourly wage of $23.01 and average hourly overtime wage of $34.52. (Declaration of Marina Hall ("Hall Decl.") ¶ 3.) She also declared Defendant employed approximately 542 customer engineers in California from November 13, 2013 to the present and 117 former non-exempt customer engineers in California from November 13, 2014 to the present. (Id. ¶¶ 5-6.) In opposition to the motion for remand, Defendant provided a declaration of David Flores, its Field HR Consultant, which addressed many of the objections that Plaintiff raised to Ms. Hall's declaration. Mr. Flores reviewed data retrieved from Defendant's payroll and human resources management system and declared the average hourly wage for customer engineers in California is $22.44 and the current and former customer engineers were employed by Defendant for a total of approximately 74,420 workweeks from November 16, 2013 to the present. (Declaration of David Flores ("Flores Decl.") ¶¶ 4-5.) Based on Plaintiff's allegations and Ms. Hall and Mr. Flores's declarations, Defendant calculated the amount of controversy of $11,276,268.31, plus attorneys' fees estimated at an additional 25 percent, resulting in a final amount of $14,095,335.38. Defendant arrived at this amount by assuming there are approximately 542 customer engineers in the putative class, who worked approximately 74,420 workweeks and earned an average hourly wage of $22.44 in the relevant time period.
Plaintiff initially challenges Defendant's use of Ms. Hall's declaration in calculating the amount in controversy.[2] Plaintiff appears to argue Defendant cannot rely on Ms. Hall's declaration without producing evidence upon which Ms. Hall bases her declaration. Contrary to Plaintiff's argument, Defendant need not "produce business records setting forth the precise number of employees in [the] putative class ... and the precise calculation of damages alleged to meet its burden regarding the amount in controversy." Long v. Destination Maternity Corp. , No. 15CV2836-WQH-RBB, 2016 WL 1604968, at *6 (S.D. Cal. Apr. 21, 2016) (internal quotation marks omitted); see *1151 Muniz v. Pilot Travel Centers LLC , No. CIV S-07-0325 FCD EFB, 2007 WL 1302504, at *4-5 (E.D. Cal. May 1, 2007) ("There is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages ... at this premature (pre-certification) stage of the litigation."). "Where, as here, a defendant must prove the amount in controversy by a preponderance of the evidence, a declaration or affidavit may satisfy the burden." Ray v. Wells Fargo Bank, N.A. , No. CV 11-01477 AHM JCX, 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011). Ms. Hall established a sufficient foundation for her testimony, particularly at this early stage of the litigation, by declaring knowledge of the employment data provided in her declaration was based on her normal business responsibilities and personal review of Defendant's personnel records. Accordingly, the Court finds appropriate Defendant's use of Ms. Hall's declaration in calculating the amount of controversy.
Next, Plaintiff mistakenly argues Defendant improperly assumed a 100 percent violation rate in calculating the amount in controversy for the meal and rest period claims. Defendant assumed a 60 percent violation rate for the meal period claim and a 30 percent violation rate for the rest period claim. Plaintiff further argues Defendant should have provided evidentiary support as to the assumed violation rates.[3] A removing defendant "must inevitably rely on some assumptions to support removal; a removing defendant is not required to go so far as to prove plaintiff's case for him by proving the actual rates of violation." Feao v. UFP Riverside, LLC , No. CV173080PSGJPRX, 2017 WL 2836207, at *5 (C.D. Cal. June 29, 2017) (citations omitted). Here, the Complaint offered no guidance as to the frequency of the alleged violations, only that Defendant had "a policy and practice" of meal and rest period violations. (See Compl. ¶¶ 50-51) (Defendant had "a policy and practice" of "failing to provide employees a meal period of not less than 30 minutes when employees were required to work more than six hours in a day, and of requiring employees to work through those meal periods"); (Id. ¶¶ 56-57) (Defendant had "a policy and practice" of "failing to provide employees a rest period of not less than 10 minutes for every four hours of work, and of requiring employees to work through those rest periods"). Consequently, in its notice of removal, Defendant conservatively assumed the putative class members were not provided three of the five meal periods and three of ten rest periods they were entitled to receive each work week, even though assumption of a 100 percent violation rate may have been reasonable based on allegations in the Complaint. The Court therefore we finds Defendant's assumed violation rates reasonable. See Alvarez v. Office Depot, Inc. , No. CV177220PSGAFMX, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding reasonable a 60 percent violation rate for claims relating to missed meal and rest periods when the complaint is indeterminate with respect to violation rates); Feao , 2017 WL 2836207, at *5 (similar); Stanley v. Distribution Alternatives, Inc. , No. EDCV172173AGKKX, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (finding appropriate assumed violation rates of "three missed rest breaks, and three missed meal breaks per week" where *1152 the complaint offers no guidance as to the frequency of these violations).
Plaintiff contends Defendant's proposed class size of 542 customer engineers "is likely inflated due to prior class settlement" in De Leon v. NCR Corp. , No. 12-cv-01637 SBA (N.D. Cal.). (Mem. of P. & A. in Supp. of Mot. at 9.) As a result, Plaintiff argues Defendant's calculation of the amount in controversy is "overstated perhaps by 25% or more[.]" (Id. at 10.) In De Leon , the settlement class included "[a]ll non-exempt customer engineers employed by Defendant within the State of California between February 21, 2008 and July 14, 2014." (Declaration of Daniel Whang ¶ 3, Ex. A.) Here, the proposed class includes "all hourly, non-exempt, customer engineers ... employed by [Defendant] within the State of California at any time during the period from four years prior to the filing of this Complaint[, i.e. November 13, 2013] up through the present[.]" (Compl. ¶ 9.) There is a potential overlap of the class and/or workweeks worked by such class members for a total of seven months. Nevertheless, even if the Court were to decrease Defendant's calculation of the amount in controversy by 25 percent, the amount would still greatly exceed $5,000,000.[4]
Having considered the allegations in Plaintiff's Complaint, the parties' briefing, and the evidentiary submissions, the Court concludes Defendant has satisfied its burden. Defendant has demonstrated by a preponderance of the evidence that the amount in controversy exceeds CAFA's jurisdictional minimum of $5,000,000. Accordingly, the Court denies Plaintiff's motion to remand.
IV.
CONCLUSION
For the foregoing reasons, Plaintiff's motion for remand is denied.
IT IS SO ORDERED.

The Court need not address the parties' argument as to whether there is diversity jurisdiction pursuant to § 1332(a), because the Court finds it has subject matter jurisdiction over this action under CAFA.

Plaintiff has not objected to the use of Mr. Flores's declaration in calculating the amount in controversy.

Notably, Plaintiff fails submit any evidence indicating a contrary rate of violation. Indeed, Plaintiff has not even submitted his own declaration stating he experienced less frequent rates of violation than those asserted by Defendant.

Plaintiff's only remaining argument concerns Defendant's calculation of attorneys' fees. Specifically, Plaintiff challenges the use of a 25 percent benchmark for attorneys' fees. The Court, however, need not address this argument because Defendant has sufficiently demonstrated the amount in controversy exclusive of attorneys' fees exceeds the jurisdictional threshold.