**State of HAWAII, Plaintiff,**

v.

**ABBOTT LABORATORIES, INC., et al., Defendants.**

**No. CV 06–00437 DAE/BMK.**

United States District Court, D. Hawai'i.

Nov. 30, 2006.

Section 3732(b) was passed in 1986, four years before this change in the way supplemental jurisdiction was approached.

844

Robert S. Libman, Esq., Miner, Barnhill & Galland, P.C., Chicago, IL, Warren Price, III, Esq., Rick J. Eichor, Esq., Price Okamoto Himeno & Lum, Honolulu, HI, for Plaintiffs.

John T. Komeiji, Esq., Watanabe Ing & Komeiji, Frederick W. Rohlfing, III, Esq., Case Bigelow & Lombardi, Kunio Kuwabe, Esq., Hisaka Yoshida & Cosgrove, William C. McCorriston, Esq., Kenneth J. Mansfield, Esq., McCorriston Miller Mukai MacKinnon, Honolulu, HI, Michael Flynn, Esq., Carlos M. Pelayo, Esq. (via phone), Davis Polk & Wardwell, New York City, Edward Burke, Esq., Burke McPheeters Bordner & Estes, Arthur F. Roeca, Esq., Roeca, Louie & Hiraoka, Lisa W. Munger, Esq., Corlis J. Chang, Esq., Thomas Benedict, Esq., Dawn T. Sugihara, Esq., Goodsill Anderson Quinn & Stifel, Jerold T. Matayoshi, Esq., Fukunaga Matayoshi Hershey & Ching, Calvert G. Chipchase, IV, Esq., Cades Schutte, Honolulu, William A. Escobar, Esq. (via phone), Kelley Drye & Warren, New York City, Ewing M. Martin, III, Esq., Kessner Duca Umebayashi Bain & Matsunaga, Brook Hart, Esq., Gregory W. Kugle, Esq., Damon Key Leong Kupchak Hastert, Bruce D. Voss, Esq., Bays Deaver Lung Rose & Baba, Dale W. Lee, Esq., Kobayashi, Sugita & Goda, Margery S. Bronster, Esq., Bronster, Crabtree & Hoshibata, Honolulu, J. Steven Baughman, Esq. (via phone), Ropes & Gray, Washington, D.C., Tina L. Colman, Esq., Alston Hunt Floyd & Ing, Honolulu, HI, for Defendants.

## ORDER DENYING DEFENDANT DEY'S APPEAL OF MAGISTRATE'S AMENDED ORDER AND ADOPTING MAGISTRATE'S AMENDED FINDING AND RECOMMENDATION

EZRA, District Judge.

On November 27, 2006, the Court heard Defendant Dey, Inc.'s ("Dey") Appeal of Magistrate Judge Barry M. Kurren's ("the Magistrate") Amended Order denying Defendant's Motion For Leave to File a Supplemental Notice of Removal ("Appeal") and Defendants' Objections to the Magistrate's Amended Finding and Recommen-

dation that Plaintiff's Motion to Remand Be Granted ("Defendants' Objections"). Rick Eichor, Esq., appeared at the hearing on behalf of Plaintiff, as well as Robert Libman, Esq., who was present via telephone; Jeffrey Portnoy, Esq., and William Escobar, Esq., appeared at the hearing on behalf of Defendants Dey and Mylan; Lisa Bail, Esq., with Jeff Galloway, Esq., appeared at the hearing on behalf of Defendant Merck; Randolf Baldemor, Esq., appeared at the hearing on behalf of Defendant Ben Venue Laboratories and the Boehringer Defendants; Kimberly Koide, Esq., appeared at the hearing on behalf of Defendant Sandoz, Inc.; Edmund Saffery, Esq., appeared at the hearing on behalf of Defendant Novartis Pharmaceuticals, Inc.; Margery Bronster, Esq., appeared at the hearing on behalf of Defendant Pfizer and Pharmacia; Robert Harris, Esq., appeared at the hearing on behalf of Defendant Ivax Corp.; Kurt Fritz, Esq., appeared at the hearing on behalf of Defendant Schering–Plough Corp.; William McCorriston, Esq., and Elizabeth Robinson, Esq., appeared at the hearing on behalf of Defendant AstraZeneca, along with Carlos Pelayo, Esq., who was present via telephone; and Frederick Rohlfing, Esq., appeared at the hearing on behalf of the Watson Defendants and Defendants Alpharma and Purepac. After reviewing the Appeal, Defendants' Objections, and the supporting and opposing memoranda, the Court DENIES Defendant Dey's Appeal and Defendants' Objections and ADOPTS the Magistrate's Amended Finding and Recommendation.

## BACKGROUND

On August 10, 2006, Defendants filed a Notice of Removal from state court to federal district court on the ground that Plaintiff's claim to recover Medicare Part B co-payments under state tort laws raises a substantial federal question under the federal laws related to Medicare. Fifteen days later, Plaintiff filed a Motion to Remand on the basis that, *inter alia,* the action arises exclusively under state law, depriving this Court of federal jurisdiction. While that Motion was pending, on October 11, 2006, Dey filed a Supplemental Notice of Removal ("Supplemental Notice") within 30 days after his counsel received delivery of a complaint that had been unsealed in the case, *United States ex re. Ven–A–Care of the Florida Keys, Inc. v. Dey, Inc. et al.,* Civ. Action No. 05–11084–MEL (D.Mass.) (the "Federal *Qui Tam* Action"). That case was brought under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* Defendant Abbott Laboratories, Inc., consented to the Supplemental Notice.

On October 27, 2006, the Magistrate issued an Order denying Dey's Supplemental Notice and issued a Finding and Recommendation granting Plaintiff's motion to remand, both of which were amended three days later for typographical errors ("Amended Order" and "Amended F & R," respectively). In denying Dey's Supplemental Notice, the Magistrate found that allowing such a supplement would be futile because Dey failed to meet the procedural requirements for removal to federal court and, substantively, Dey lacked original jurisdiction.

In the Amended F & R, the Magistrate found that "Defendants [were] unable to meet their burden of showing that the meaning of the Medicare provisions at issue are either actually disputed or substantial enough to create federal jurisdiction," as required by law. The Magistrate concluded by stating that,

[a]llowing federal jurisdiction here, where only a federal standard is implicated, would likely lead to many other cases in unrelated matters being regularly removed to federal court. Adjudi-

cation of this type of case could well disturb the congressionally approved balance between federal courts and state courts, providing [ ] additional grounds for remand.

Accordingly, the Magistrate granted Plaintiff's Motion for Remand to state court.

On November 7, 2006, Dey appealed the Magistrate's Amended Order denying his Supplemental Notice, and, on November 14, 2006, Dey filed Objections to the Magistrate's Amended F & R.

## STANDARD OF REVIEW

### A. Appeal of the Magistrate's Amended Order

Under Local Rule 74.1, "[a] district judge shall consider the appeal and shall set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." *See also Rockwell Int'l, Inc. v. Pos–A–Traction Indus., Inc.,* 712 F.2d 1324, 1325 (9th Cir.1983). "For a magistrate's decision to be 'clearly erroneous,' the district court must have a 'definite and firm conviction that a mistake has been committed.'" *Conant v. McCoffey,* No. C 97–0139 FMS, 1998 WL 164946, at *2 (N.D.Cal.1998) (citing *Sana for Sana v. Hawaiian Cruises, Ltd.,* 961 F.Supp. 236, 238 (D.Haw.1997), *rev'd on other grounds,* 181 F.3d 1041 (9th Cir.1999)). "A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." *Id.*

### B. Objections to the Magistrate's Amended F & R

Any party may serve and file written objections to proposed findings and recommendations. *See* 28 U.S.C. § 636(b). Pursuant to Local Rule 74.2, when a party objects to a magistrate judge's dispositive order, findings, or recommendations, the district court must make a *de novo* determination. A *de novo* review means "the court must consider the matter anew, the same as if it had not been heard before and as if no decision previously had been rendered." *U.S. Pac. Builders v. Mitsui Trust & Banking Co.,* 57 F.Supp.2d 1018, 1024 (D.Haw.1999) (citation omitted).

"The court may 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.' The judge may also receive further evidence or recommit the matter to the magistrate with instructions." *McDonnell Douglas Corp. v. Commodore Bus. Machs., Inc.,* 656 F.2d 1309, 1313 (9th Cir.1981) (citation omitted); LR 74.2.

## DISCUSSION

### A. Appeal of the Magistrate's Amended Order

■ Dey contends that the Magistrate's Amended Order denying its Supplemental Notice as "futile" was contrary to law, arguing that the procedural requirements for removal were satisfied under Federal Rules of Civil Procedure 15(c) ("Rule 15(c)") and/or under 28 U.S.C. § 1446(b) (1988) and that original jurisdiction exists under 31 U.S.C. § 3732(b) (1986).

#### 1. Procedural requirements for removal

Dey asserts that the procedural requirements for removal may be satisfied in two ways: (1) by finding that the initial Notice of Removal constitutes a "pleading" under Rule 15(c), thus allowing an amendment or a supplement of that Notice to relate back to the date of the Notice, and/or (2) by finding that the Federal *Qui Tam* Action constitutes an "other paper" within the meaning of 28 U.S.C. § 1446(b) to permit supplementation within thirty days of receipt

### a. *"Pleading" under Rule 15(c)*

Dey cites out-of-district cases in support of the proposition that a notice of removal may constitute a "pleading" under Rule 15, thus permitting the Supplemental Notice to "relate back" to the original notice. The cases cited, however, merely uphold the general rule that parties may amend pleadings under Rule 15 to cure a technical defect in the jurisdictional allegation, namely, to allege diversity of citizenship in full. *See, e.g., Grow Group, Inc. v. Jandernoa,* No. 94 Civ. 5679, 1995 WL 60025, at *2–3 (S.D.N.Y.1995) (permitting amendment of a removal notice where the original notice did not allege complete diversity); *Kingman v. Sears, Roebuck & Co.,* 526 F.Supp. 1182, 1185 (D.Me.1981) ("Matters of form and technical defects and even a defective statement of jurisdictional grounds (in a removal petition) are subject to amendment under (Fed.R.Civ.P.15(a) and 28 U.S.C. s 1653)," thus allowing a notice of removal to be amended to allege diversity) (citation omitted).; *Handy v. Uniroyal, Inc.,* 298 F.Supp. 301, 302, 305 (D.Del.1969) (finding that "it is clear that both under 28 U.S.C. § 1653 and Rule 4(h), Fed.R.Civ.P., and possibly also under Rule 15(a), the Court has the power to permit the defendant to amend its removal petition to cure a defect in a purported jurisdictional allegation even though the time for the filing of an original petition has expired"). By implication, the notices of removal were considered "pleadings" under Rule 15, but only because defects in the notices were present.

Notwithstanding, those cases do not stand for the blanket proposition that all amendments to removal notices constitute amendments to "pleadings" under Rule 15(c). Here, Dey seeks to allege *new* grounds for removal, not to cure existing grounds that were alleged defectively.[1] This distinction is significant. Allowing an amendment to relate back to an original removal notice when the amendment is not alleging a new jurisdictional basis does not change the substance of the removal. It is merely correcting what was originally pled. Making a technical correction such as that does not give the parties multiple opportunities to argue removal to federal court at any given time that a new ground arises. Instead, it simply clarifies removal in the first place.

If this Court were to adopt a rule that parties may amend or supplement removal notices under Rule 15(c) any time that new grounds arise, thereby permitting the amendment to "relate back" to the original notice, a flood of state cases could be removed after states have expended significant time and efforts litigating them in state court. That situation would create undue hardship on plaintiffs by having to re-litigate their cases in federal court and on the federal courts from having an increased caseload and from having to get up to speed on numerous cases post-removal. This holds particularly true in a case like this where numerous "sister" cases are lingering in state courts. Accordingly, based on the absence of law supporting Dey's position and the policy arguments discussed, this Court cannot find that the Magistrate's ruling was contrary to law.[2] Therefore, Dey failed to

---

1. Dey's other cases involve similar situations where the amendments were to cure defects, not to allege new grounds of removal as here. *See Hendrix v. New Amsterdam Cas. Co.,* 390 F.2d 299, 301–01 (10th Cir.1968); *Meyers–Arnold Co. v. Maryland Cas. Co.,* 248 F.Supp. 140, 145–46 (D.S.C.1965).

2. Because this Court finds that, in this context, the notice of removal that Dey sought to amend in its Supplemental Notice was not a pleading within the meaning of Rule 15(c), this Court need not reach the issue of whether Dey's claim in its Supplemental Notice "ar[ises] out of the conduct, transaction, or

satisfy the procedural requirement under Rule 15(c).

b. *"Other paper" under 28 U.S.C. § 1446(b)*

■ Because the Supplemental Notice does not relate back to the original Notice of Removal under Rule 15(c), Dey must satisfy the requirement under 28 U.S.C. § 1446(b) to survive removal procedurally. Under § 1446(b), a defendant may remove a case "within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, *order or other paper* from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b) (emphasis added). After that thirty day period has expired, a notice of removal generally may not be amended to add a separate basis for removal, except to correct a defective allegation. *See ARCO Envtl. Remediation, L.L.C. v. Dep't of Health and Envtl. Quality of Montana,* 213 F.3d 1108, 1117 (9th Cir.2000).

Dey argues that the Federal *Qui Tam* Action that was unsealed should constitute an "other paper" under 28 U.S.C. § 1446(b), thus satisfying the procedural requirement under that statute. Dey filed its Supplemental Notice on October 11, 2006, within 30 days of receiving the Federal *Qui Tam* Action on September 11, 2006. Accordingly, if it constitutes an "other paper" within the meaning of 28 U.S.C. § 1446(b), then this requirement is met.

"Within the Ninth Circuit, the phrase 'other paper' has been interpreted as 'doc-uments generated within the state court litigation[.]'" *Rose v. Beverly Health & Rehabilitation Servs., Inc.,* No. 1:06cv0067, 2006 WL 2067060, at *5 (E.D.Cal.2006) (citations omitted). The Federal *Qui Tam* Action is not within the state court litigation. Furthermore, the two primary cases on which Dey relies to argue that "the order or other paper" requirement need only require some type of nexus with the intervening action are inapposite to the case at hand. *See Green v. R.J. Reynolds Tobacco Co.,* 274 F.3d 263 (5th Cir.2001); *Doe v. Am. Red Cross,* 14 F.3d 196 (3rd Cir.1993). As Plaintiff states in its Response to Dey's Appeal, both of those cases involved "(1) an intervening decision from a superior court; (2) that was binding on the court handling the removed state action; (3) and resolved a disputed question of law; (4) that was dispositive as to the question of federal jurisdiction at issue in the removed action."[3] *See Doe,* 14 F.3d at 198 (involving an intervening decision that was an express authorization from the Supreme Court to remove the case from state to federal court); *Green,* 274 F.3d at 265 (finding that an intervening case that preempted certain state law constituted an "order" from which defendants could file a second removal notice, considering that state law had been preempted).

Additionally, in both of those cases, the courts limited their holdings to the narrow facts and circumstances involved. *See, e.g., Green,* 274 F.3d at 267–68. The Third Circuit in *Doe* found that a Supreme Court decision could constitute an "order" within the meaning of § 1446(b) and the Fifth Circuit in *Green* found that the preemption

---

occurrence set forth or attempted to be set forth in the original pleading[.]"

**3.** Dey further argues that the nexus in *Doe* and in *Green* is weaker than the one here by discussing cases that address *Grable & Sons Metal Prods., Inc. v. Darue Engineering &*

*Mnfg.,* 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005), which involved federal question jurisdiction. That case has no bearing on the § 1446(b) analysis; thus, that argument is misplaced.

case could fall within the narrow scope of "order" *only under the narrow circumstances involved in those cases. See Doe,* 14 F.3d at 202; *Green,* 274 F.3d at 268. In fact, the Fifth Circuit acknowledged that "[m]ost other courts to address the issue have found court decisions in unrelated cases not to constitute 'orders' or 'other papers' under § 1446(b) and not to be grounds for removal," citing numerous cases in support. *Green,* 274 F.3d at 266. Consequently, those cases do little to advance Dey's argument.

Given the fact that the Federal *Qui Tam* Action does not resolve a matter of law that is controlling in this case and that there was no express authorization for removal from a superior court, there was a sufficient basis on which the Magistrate could have found that the Federal *Qui Tam* Action did not constitute an "order or other paper" within the meaning of 28 U.S.C. § 1446(b) to permit removal. Dey failed to satisfy the procedural requirement under that statute; thus, the Magistrate's finding was not contrary to law.[4]

2. *Substantive basis for removal under 31 U.S.C. § 3732(b)*

■ Even if Dey had met the procedural requirements, its arguments still would fail substantively. Dey asserts that 31 U.S.C. § 3732 confers original jurisdiction, not supplemental jurisdiction, contrary to the Magistrate's finding.[5] *See also* 28 U.S.C. § 1441(a) (1948) (removal general-

ly). That statute provides: "The district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section 3730." 31 U.S.C. § 3732(b).

This Court disagrees with Dey and agrees with the Magistrate. The Magistrate found that the language under that statute is "dependent, not independent." (*Amended Order* at 13.) This Court interprets that to mean that a state-initiated case founded on state law may be removed to federal court under 31 U.S.C. § 3732(b) only when that case may attach to a federal case that "arises from the same transaction or occurrence." In other words, the state case may not be removed on its own merit, independent of the federal action, because removal of the state case "depends" on the existence of and the attachment to a similar federal case. That interpretation of the statute is reasonable and is not contrary to law.

Next, the Magistrate found that the legislative history "allows—but does not force—states to intervene in FCA actions." (*Amended Order* at 14.) Notably, the Magistrate pointed out that the National Association of the State Attorney's General urged this section to "allow[ ] State ... governments to join State law actions with False Claims Act actions brought in Federal district court," citing S.Rep. No. 345,

4. Additionally, Dey argues that the Federal *Qui Tam* Action bars suit against it in state court. Dey's argument is unclear. It appears to argue that, even if the Magistrate read *Doe* and *Green* correctly to find that the "order or other paper" requirement "prohibit[s] suits against [Dey] in state court," the complaint in the Federal *Qui Tam* Action meets this requirement, thus prohibiting suit in state court. Dey appears to be confused. The Magistrate did not make any such finding. He merely stated that the Federal *Qui Tam* Action "does

nothing to prohibit suit against Dey in state court," as was the case in *Green* where preemption was involved.

5. As Plaintiff notes, Dey does not dispute that supplemental jurisdiction cannot be a basis for removal, but only that the statute creates original jurisdiction. *See Syngenta Crop Protection, Inc. v. Henson,* 537 U.S. 28, 34, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002).

99th Cong., 2nd Sess., at 16 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5281. (*Id.*) That statement suggests that *states* have discretion to remove cases to federal court by intervening in or attaching to actions brought in federal court. It does not indicate that Congress intended to grant original jurisdiction (or any discretion) to private parties to remove cases to federal court, as Dey contends.

Dey points to no law that would contradict that conclusion. Dey first cites a Louisiana case to support the idea that Congress intended to confer subject matter jurisdiction on private parties under 31 U.S.C. § 3732(b). *See U.S. ex rel. La Corte v. Merck & Co. Inc.*, No. Civ. A. 99–3807, 2004 WL 595074 (E.D.La. March 23, 2004). In that case, the *State* was the party seeking to intervene in a federal case involving the same transactions and occurrences to recover overpayments of state money for a drug. *See id.* at *7. That case is different from the present situation where a private party, Dey, is seeking to remove the case to federal court. Furthermore, Dey is not seeking *to intervene* in the federal case, but rather wants to remove its case to federal court under *original jurisdiction*.

Dey also cites a Second Circuit case, which is equally inapplicable. *See U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 866 (2d Cir. 1997). That case dealt with subsection (a) of 31 U.S.C. § 3732, with the Second Circuit finding that subsection (a) concerns venue not subject matter jurisdiction. *See id.* It based that decision in part on its finding that 31 U.S.C. § 3732(b) deals with subject matter jurisdiction; thus, further indicating that subsection (a) is not directed at jurisdiction, but rather is directed at venue. *See id.* Nonetheless, the Second Circuit was not focused on the *type* of jurisdiction that subsection (b) confers,

whether original or supplemental subject matter jurisdiction. It merely was using the term "subject matter jurisdiction" to indicate that subsection (b) deals with jurisdiction, while subsection (a) deals with venue. Moreover, the term subject matter jurisdiction has been used to mean either original jurisdiction, such as federal question or diversity, or supplemental jurisdiction. *See, e.g., Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1166 (9th Cir.2002) (considering "the constitutionality of *supplemental subject matter jurisdiction* involving a party over whom there is no independent basis for federal court jurisdiction") (emphasis added). Thus, we do not find either of those cases persuasive.

Moreover, the Magistrate points out that Congress could have placed "original jurisdiction" in the statutory language had it wanted it to create original jurisdiction under 31 U.S.C. § 3732(b), as it has in other statutes. (*Amended Order* at 14–15.) Dey makes the logical leap that, because the courts in *Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992) and *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 123 S.Ct. 1882, 155 L.Ed.2d 923 (2003) found that original jurisdiction may be had where the respective statutes did not expressly provide for it, original jurisdiction may be had under § 3732 because, presumably, the language under that section is equally open-ended. *S.G.*, 505 U.S. at 247–48, 112 S.Ct. 2465 (holding that the language "sue and be sued in courts of law and equity, State or Federal" in the Red Cross's federal charter conferred original jurisdiction); *Breuer*, 538 U.S. at 691, 123 S.Ct. 1882 (reviewing language under 29 U.S.C. § 216(b) of the Federal Labor Standards Act that an action "may be maintained ... in any Federal or State court of competent jurisdiction" and holding that that language did not bar removal to federal court). This Court disagrees.

The language found in *S.G.* and *Breuer* specifically refer to the initial maintenance of suit in State or Federal Court, not the tacking on of a state suit to a federal action that "arises from the same transaction or occurrence," as required under 31 U.S.C. § 3732.

Additionally, Dey takes a narrow interpretation of supplemental jurisdiction, as codified at 28 U.S.C. § 1367, which authorizes federal courts to exercise supplemental jurisdiction over state law *claims* linked to federal claims. Because 31 U.S.C. § 3732 specifically refers to *actions* brought under state law that arise from the same transaction or occurrence as an *action* brought under 31 U.S.C. § 3730 (civil actions for false claims), the argument goes that the statute cannot be referring to supplemental jurisdiction. That reading is unreasonably narrow, at best. Whatever it is called, whether supplemental jurisdiction or otherwise, the point is that the statute requires another action to be brought under federal law to which the state action can attach if it arises from the same transaction or occurrence. After undertaking a review of the language of the statute, the legislative history, and the context in which it was enacted, the Magistrate concluded that they all "indicate that [the statute] grants the district courts not original jurisdiction, but supplemental jurisdiction." This Court agrees and finds that the Magistrate's conclusion is not contrary to law.

Finally, Dey's argument that it may remove this case under the general federal question statute, 28 U.S.C. § 1331, is unrealistic. As the Magistrate commented, "[i]f Dey is correct, then all grants of supplemental jurisdiction would also simultaneously be grants of original jurisdiction." (*Amended Order* at 13.) That result would lead this Court down a path that it does not care to travel.

## B. Objections to the Magistrate's Amended F & R

Defendants object to the Magistrate's Amended F & R on three grounds: (1) the Amended F & R is at odds with the District Court of Massachusetts' decision in *In re Pharmaceutical Indus. Average Wholesale Price Litigation,* 457 F.Supp.2d 77 (D.Mass.2006) ("*In re Pharmaceutical*"); (2) this Court should defer ruling on their objections until after the Judicial Panel on Multidistrict Litigation ("JPML") has made a final ruling on transfer of the case, which will occur on November 30, 2006; and (3) the Magistrate misapplied the test in *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mnfg.,* 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005).

"When a case is removed to federal court, there is a strong presumption against federal court jurisdiction." *Opuna, LLC v. Sabbagh,* Civil No. 05–00488, 2006 WL 2374750, at *1 (D.Haw. Aug. 15, 2006); *see also Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). The Ninth Circuit narrowly construes the removal statute, 28 U.S.C. § 1441, against removal jurisdiction. *See Sabbagh,* 2006 WL 2374750, at *1. The removing party, that is, Defendants, always bears the burden of establishing federal jurisdiction. *See Abrego Abrego v. The Dow Chemical Co.,* 443 F.3d 676, 682–83 (9th Cir.2006). Courts should resolve doubts of subject matter jurisdiction in favor of remand. *See Sabbagh,* 2006 WL 2374750, at *1.

Preliminarily, this Court will not defer a decision on Defendants' Objections because, in an Order filed on October 16, 2006, the Magistrate already denied without prejudice Defendants' Joint Motion to Stay Proceedings Pending Transfer by the JPML. *See, e.g., State v. Abbott Labs.,* 390 F.Supp.2d 815, 819 (W.D.Wis.2005) (deny-

ing motion to stay under nearly identical facts). The Magistrate found that "[t]his is the best forum in which to resolve the jurisdictional issues," and that, should Plaintiff's remand motion be denied, Defendants again can file a motion to stay. As Plaintiff's motion has not been denied yet and Defendants did not appeal that Order, this argument is premature.

■ Next, Defendants have failed in their burden of proving removal. There is a split between federal district courts on the issue of whether the meaning of Average Wholesale Prices ("AWP") is actually disputed and substantial. Defendants essentially argue that *In re Pharmaceutical*, decided on October 24, 2006, should be controlling, thus allowing removal; Plaintiff disagrees, relying on other cases that found that remand was proper. The test, as announced in *Grable*, is whether a state-law claim raises a federal issue that is (1) "actually disputed" and (2) "substantial," and, if so, (3) whether "a federal forum may entertain [the claim] without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314, 125 S.Ct. 2363.

In *In re Pharmaceutical*, the District of Massachusetts applied the 3–part *Grable* test to hold that removal was warranted. 457 F.Supp.2d at 79–81. The court found that (1) the meaning of AWP was a "substantial federal issue that properly belongs in federal court"; (2) it was "actually disputed" because Defendants "protested that Congress understood that AWP did not represent the actual costs that providers paid for drugs," and (3) interpretation of the term has "national significance" that, if determined in federal court, would not disturb the balance between federal and state courts. 457 F.Supp.2d at 79–81. The court recognized that other district courts have reached contrary conclusions, but it failed to distinguish those decisions or to

provide any rationale as why it took a different approach. *See id.* at 81.

This Court does not find that case compelling; rather, this Court is in agreement with the "other district courts" from which the District of Massachusetts strayed. *See, e.g., Abbott Labs.*, 390 F.Supp.2d at 822–24 (remanding a similar AWP/Medicare claim on the basis that removal would disturb the balance struck by Congress between federal and state courts); *Pennsylvania v. Tap Pharmaceutical Prods., Inc.*, 415 F.Supp.2d 516, 525–26 (E.D.Pa. 2005) (remanding on the ground that AWP is not "actually disputed and substantial"). Significantly, "AWP is no longer the standard for reimbursement under Medicare." *Tap Pharmaceutical*, 415 F.Supp.2d at 525; *see also In re Pharmaceutical*, 2006 WL 3019193, at *1 ("As of January 1, 2005, the reimbursement rate [under the Medicare statute] no longer depends upon AWP.") Interpretation of the term AWP is only significant as it relates to states' reimbursement formulas, many of which, including Hawaii's, rely on the AWP as a standard for reimbursement of state Medicare and Medicaid programs. *See In re Pharmaceutical*, at 77; *Abbott Labs.*, 390 F.Supp.2d at 817; *Tap Pharmaceutical*, 415 F.Supp.2d at 519. Therefore, as the Magistrate aptly stated, while AWP may be "a substantial issue for the parties, it is no longer a substantial issue for the federal government."

Nor is the term AWP "actually disputed" as contemplated in *Grable*, 545 U.S. at 311, 125 S.Ct. 2363 (examining a claim that rested on the meaning of "notice" in the federal tax law). The crux of Plaintiff's claim, as stated in its Complaint, is that Defendants have "submitted false claims and engaged in unfair or deceptive acts or practices in the sale, pricing and marketing of their prescription drug prices," in contravention of state common law and statutes. Even if the exact definition of

AWP is disputed in a nominal way, as the Magistrate found, it is not "actually disputed," within the context of *Grable,* in that it is not the primary focus of the Complaint, but merely is a peripheral issue. The Complaint primarily rests on tort claims under state law, not the interpretation of a term that is not of value anymore under federal law. Thus, however much Defendants might differ in the precise meaning of that term, they have failed to show that the term is "actually disputed."

Because the term AWP is neither substantial nor actually disputed to permit removal, this Court need not touch on the balance of judicial responsibilities between state and federal courts, except to note the concern in *Abbott Labs,* that to allow removal to federal court would cause a "significant disruption in the division of labor between federal and state courts," given the number of cases that states have filed in related matters. 390 F.Supp.2d at 823. Thus, remand properly was granted.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendant Dey's Appeal and Defendants' Objections and ADOPTS the Magistrate's Finding and Recommendation in all respects and orders this matter remanded to state court.

IT IS SO ORDERED.

AMENDED FINDING AND RECOMMENDATION THAT PLAINTIFF STATE OF HAWAII'S MOTION TO REMAND BE GRANTED

*FINDING AND RECOMMENDATION THAT PLAINTIFF STATE OF HAWAII'S MOTION FOR REMAND BE GRANTED*

KURREN, United States Magistrate Judge.

Before the Court is Plaintiff State of Hawaii's Motion for Remand. After careful consideration of the Motion, memoranda, and arguments of counsel, the Court hereby FINDS & RECOMMENDS that Plaintiff's Motion be GRANTED.

## BACKGROUND

Plaintiff State of Hawaii (the "State") filed this action in the Circuit Court of the First Circuit of Hawaii, alleging that Defendants "engage[d] in an unlawful scheme to cause Hawaii and its citizens to pay inflated prices for prescription drugs." (Pl.'s Mem. Supp. Mot. 5–6.) Specifically, the State claims that Defendants published phony "average wholesale prices" ("AWPs") and engaged in other deceptive acts that led to overpayments by both the State Medicaid program and Medicare beneficiaries in Hawaii. The State alleges that these actions violated the Hawaii False Claims Act, the Hawaii Unfair or Deceptive Practices Act, and constituted common law intentional and/or negligent misrepresentation and unjust enrichment.

The State filed its original Complaint on April 27, 2006. No Defendant was served with the Complaint prior to July 21, 2006. However, on May 25, Defendants Schering–Plough Corporation ("Schering Plough") and its subsidiary Warrick Pharmaceuticals Corporation ("Warrick") served the State with a Notice of Deposition.

Defendants removed this case to federal court on August 10, 2006. On September 12, 2006, a Conditional Transfer Order for this case was filed by the Judicial Panel on Multidistrict Litigation to transfer the case to the District of Massachusetts for consolidated pretrial proceedings with a number of similar cases. (Defs.' Mem. Opp. Mot. Ex. A.)

The State now moves for remand for lack of subject matter jurisdiction and untimely filing of the notice of removal.

*LEGAL STANDARD*

■ District courts of the United States have original subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2000). Generally, the plaintiff can only invoke this federal question jurisdiction by pleading a cause of action created by federal law. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 125 S.Ct. 2363, 2366, 162 L.Ed.2d 257 (2005).

■ In certain cases, however, federal question jurisdiction exists even absent a federal cause of action. *Id.* at 2366–67. Federal courts have subject matter jurisdiction over state law claims that "implicate significant federal issues." *Id.* at 2367. Under *Grable*, significant federal issues are implicated when the state law claims (1) "necessarily raise a stated federal issue," (2) which are "actually disputed and substantial," (3) and which "a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* In *Grable*, the meaning of a federal tax provision that implicated the government's ability to satisfy its claims from the property of delinquents constituted a significant federal issue sufficient to create federal jurisdiction. *Id.* at 2368. A significant federal issue did not exist, however, where a state law tort claim involved an allegation that a drug company had violated a federal branding law. *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

When a case involving a federal question is originally filed in state court, the defendants may remove it to federal court. 28 U.S.C. § 1441(b). Removal notices must be filed "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon

which such action or proceeding is based ...." 28 U.S.C. § 1446(b).

Where removal is not proper, the case must be remanded to state court. *See* 28 U.S.C. § 1447(c) (2000). The removal statute is strictly construed in favor of remand and there is a "strong presumption against removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). The defendant "always has the burden of establishing that removal is proper." *Id.*

*DISCUSSION*

The State moves for remand of this case on two grounds: first, that the notice of removal was untimely; second, that the Court lacks subject matter jurisdiction over this case. Although the State's first argument fails, its second argument prevails. This case does not implicate federal issues significant enough for this court to exercise subject matter jurisdiction.

I. TIMELINESS

■ To be timely, a notice of removal must be filed "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based ...." 28 U.S.C. § 1446(b). A defendant's right to remove is triggered only by formal process, "not by mere receipt of the complaint unattended by any formal service." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999). On its face, Defendants' removal action is timely. The notice of removal was filed on August 10, 2006, less than thirty days after the first Defendant was formally served on July 21.

Nonetheless, the State argues that by serving it with a deposition notice, Schering Plough and Warrick constructively

waived service. The State further argues that this waiver of service started the thirty-day removal period for all Defendants, and that therefore the notice of removal was untimely because it was filed more than thirty days after the first Defendant allegedly waived service.

The State's argument fails for two reasons. First, it is not enough for a defendant to constructively waive service. Under *Murphy Bros.*, a defendant must "agree[ ] to waive service" in order to start the thirty day removal period. 526 U.S. at 348, 119 S.Ct. 1322. There was no such agreement to waive service here.

Second, even if one of the Defendants had agreed to waive service, the thirty day removal period would not have commenced. The only United States Court of Appeals to explicitly address the issue since *Murphy Bros.* held that under *Murphy Bros.*, the thirty day removal period only begins after the last defendant is served. *See Marano Enter. of Kansas v. Z–Teca Rests.*, 254 F.3d 753, 757 (8th Cir. 2001). The last-served rule has similarly been followed by Ninth Circuit district courts since *Murphy Bros. See, e.g., Tomlinson Black North Idaho v. Kirk–Hughes*, 2006 WL 1663591 (D.Idaho June 8, 2006). Because the last Defendant had not even been formally served by August 10, Defendants' notice of removal was timely filed under § 1446(b).

## II. FEDERAL QUESTION JURISDICTION

The State also moves for remand on the grounds that the Court lacks subject matter jurisdiction over this case. Here, the State prevails.

Defendants seek to remove this case based on the narrow, but longstanding exception that certain cases implicate federal issues significant enough for federal courts to exercise jurisdiction over them although no federal claims or causes of action are stated. Defendants argue that Hawaii's claim to recover Medicare Part B co-payments on behalf of Hawaii Medicare Part B beneficiaries is just such a case, and that "it requires the resolution of issues of federal law under the Medicare statutes and regulations." (Notice of Removal 7.) In particular, Defendants argue that "[t]he meaning of AWP under the Medicare statute is in dispute and will determine whether the State can succeed on its theory of the case." (Defs.' Mem. Opp. 14.)

Whether the meaning of AWP under the Medicare statute actually does implicates a significant federal issue is governed by *Merrell Dow* and the three-part test of *Grable*. Here, it is not disputed that the state law claims meet the threshold requirement of "necessarily rais[ing] a stated federal issue," *Grable* 125 S.Ct. at 2368. What Defendants bear the burden of showing here is (1) that the meaning of AWP in the Medicare statute is "actually disputed and substantial," *id.*, and (2) that this is the type of case that "a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities," *id.* Any doubts will be resolved in favor of remand. *Gaus*, 980 F.2d at 566.

### A. *"Actually Disputed and Substantial"*

Defendants are unable to meet their burden of showing that the meaning of the Medicare provisions at issue are either actually disputed or substantial enough to create federal jurisdiction. First, and most importantly, Defendants fail to show that determining the meaning of AWP is "substantial" under *Grable* and *Merrell Dow*. Defendants argue that because Medicare is "an entirely federal program," the federal courts "have a special responsibility to entertain claims on behalf of Medicare beneficiaries." (Defs.' Mem.

Opp. Mot. 17–18.) Additionally, they argue, "inconsistent determinations of what AWP was understood to mean under the Medicare statute in these various cases could create collateral confusion and inconsistencies in the administration of federally supported Medicaid programs." (Defs. Mem. Opp. Mot. 18–19.)

Defendants' position receives some support from Judge Saris' recent ruling in *State of Arizona v. Abbot Laboratories, Inc.*, MDL No. 1456, Civ. No. 01–12257–PBS (D.Mass. Oct. 24, 2006). In *State of Arizona*, Judge Saris concluded that the meaning of AWP is substantial because (1) "[t]he government has a strong national interest in prohibiting fraud upon medicare beneficiaries because fraudulent acts threaten Medicare's integrity"; (2) how AWP is interpreted will greatly effect the Medicare litigants in Arizona and also in other states; and, (3) determining the meaning of AWP "directly impacts the viability and effectiveness of the federal Medicare program." MDL No. 1456, Civ. No. 01–12257–PBS, Slip Opinion at 8–9.

The State, however, contends that it cannot be the case that mere construction of a federal statute, by itself, is sufficient to create federal jurisdiction. If it were, the State argues, "then any time the interpretation of a federal statute arises in the context of a state law claim, federal jurisdiction would exist." (Pl.'s Reply 5.) Moreover, the State argues, the issue is not substantial because AWP is no longer the standard for reimbursement under Medicare.

The State prevails, Judge Saris' recent ruling notwithstanding. Just like the claims in *Merrell Dow*, these are state law tort claims that rest in part on a federal standard. This is a far different set of facts than in *Grable*, where the ability of the Internal Revenue Service to enforce the tax code through tax liens was at issue.

Here, the resolution of the meaning of AWP will have little effect on the future viability of the Medicare program since the AWP standard has been abandoned. While it may well be the case that the meaning of AWP is a substantial issue for the parties, it is no longer a substantial issue for the federal government.

Moreover, while Congress's failure to create exclusive federal jurisdiction for cases involving improper notice in tax foreclosure actions might well be attributed to oversight, the same cannot be said for the failure to create exclusive federal jurisdiction for violations of the Medicare statute. In other words, if Congress had thought that AWP and other Medicare provisions implicated a substantial federal interest, it could have ensured that only federal courts would hear such cases. It did not.

■■■ Second, in addition to failing to show that the meaning of "AWP" is "substantial," Defendants also fail to show that the meaning of AWP is "actually disputed." Defendants argue that the meaning of AWP is disputed because "there is evidence that Congress understood that AWPs did not represent the actual cost providers paid for the drugs . . . ." (Defs.' Mem. Opp. 15.) However, they neither produce evidence to this effect, nor do they even articulate a possible alternative meaning for "average wholesale price." While the meaning of AWP may be nominally disputed by Defendants, they have not shown that it is actually disputed.

This is the same conclusion reached, albeit for slightly different reasons, in *Commonwealth of Pennsylvania v. Tap Pharmaceutical Products, Inc.*, 415 F.Supp.2d 516 (E.D.Pa.2005) (holding that "[t]he term 'average wholesale price' is not 'actually disputed' because the Commonwealth does not premise its claim on the construction of these words as they appear in the

applicable Medicare statute and regulations") and *Texas v. Abbot Laboratories., Inc.* 2005 U.S. Dist. LEXIS 42434 (W.D.Tex.2005) (holding that "[i]t is clear that Plaintiffs do not premise their claims on the definition of the term 'Medicare AWP' ... [and so] no court need ascribe any meaning to the term for either party to prevail"). Defendants fail to meet their burden of showing that the State's claim involves issues that are actually disputed or substantial enough for federal jurisdiction to exist, and so the case must be remanded.

### B. *Disturbing the Balance*

Additionally, it may well be the case that taking cases such as this would "disturb the congressionally approved balance of federal and state judicial responsibilities," *Grable* 125 S.Ct. at 2368. Unlike in *Grable,* where very few foreclosure cases were likely to implicate a federal interest, here, as in *Merrell Dow,* a substantial number of state tort cases are likely to implicate a federal statute. This might disturb the congressionally approved balance and lead to the clogging of the federal courts.

In fact, several courts addressing this precise issue have determined just that. *See Wisconsin v. Abbott Laboratories,* 390 F.Supp.2d 815 (W.D.Wis.2005); *Minnesota v. Pharmacia Corp.,* 2005 U.S. Dist. LEXIS 27638 (D.Minn.2005). At least two courts, however, have found to the contrary. In one instance, the decision was distinguished from *Wisconsin* (and from *Merrell Dow*) on the grounds that a federal contract was involved. *See Santa Clara v. Astra. USA, Inc.,* 401 F.Supp.2d 1022, 1030 (N.D.Cal.2005) ("The instant case is also distinct: it involves a federal contract whereas none was at issue in *Wisconsin.* The instant case therefore has a higher quotient of federal interest.... [because this is] the type of task that already falls to federal courts.") Here, as in *Wisconsin* and *Minnesota,* no federal contract is at issue.

The other case to the contrary is *State of Arizona,* MDL No. 1456, Civ. No. 01–12257–PBS, Slip Opinion at 9–11. There, Judge Saris found that "granting federal jurisdiction in the case does not open the door to a horde [of cases]: the horde has already stormed the door." *Id.* While it may be that this particular horde has already stormed the door, the inquiry should rather focus on how many other hordes are gathered in wait on the horizon. Allowing federal jurisdiction here, where only a federal standard is implicated, would likely lead to many other cases in unrelated matters being regularly removed to federal court. Adjudication of this type of case could well disturb the congressionally approved balance between federal courts and state courts, providing an additional grounds for remand.

### CONCLUSION

For the foregoing reasons, the Court FINDS and RECOMMENDS that Plaintiff's Motion for Remand be GRANTED. October 30, 2006