In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-1999

STATE OF WISCONSIN,

*Plaintiff-Appellee,*

*v.*

AMGEN, INC., *et al.,*

*Defendants,*

and

DEY, INC.,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 06-C-0582-C—**Barbara B. Crabb**, *Chief Judge.*

_____

ARGUED JANUARY 11, 2008—DECIDED FEBRUARY 4, 2008

_____

Before BAUER, POSNER, and EVANS, *Circuit Judges.*

POSNER, *Circuit Judge.* The State of Wisconsin filed a suit in a Wisconsin state court against Dey and others, charging fraudulent pricing of pharmaceutical drugs in violation of Wisconsin state law. (Dey, a subsidiary of Merck, is a manufacturer of such drugs.) Many similar suits have been filed in other state courts. See *In re Pharmaceutical Industry Average Wholesale Price*, 509 F. Supp. 2d

82 (D. Mass. 2007). Three times Dey removed the case to federal district court under 28 U.S.C. § 1446, which provides, so far as relates to this case, that if "the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b). Three times the district court remanded the case to state court, and the third time it sanctioned Dey in the amount of $14,208 in attorneys' fees and costs, precipitating this appeal. The amount is trivial, but since the remand orders could not be appealed, 28 U.S.C. § 1447(d); *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127-28 (1995); *Phoenix Container, L.P. v Sokoloff*, 235 F.3d 352, 354-55 (7th Cir. 2000), appealing from the sanction gives Dey a shot at obtaining an appellate ruling on removability.

The third notice of removal was filed more than two years after the State of Wisconsin's suit had been filed. The basis of the notice was the unsealing of a complaint in the federal district court in Massachusetts, charging Dey and others with violating the False Claims Act, 31 U.S.C. §§ 3729 *et seq*. Dey argued in support of removal that the filing of that suit had created federal jurisdiction over Wisconsin's suit for the first time, and so the suit was removable to federal court for the first time. The district judge disagreed. If she was wrong, there is no basis for the award of sanctions, since she didn't base the award on the fact that Dey had twice earlier failed to remove the case successfully.

The provision of the False Claims Act that brought the State of Wisconsin's suit within the original jurisdiction of

the federal courts, 31 U.S.C. § 3732(b), provides that "the district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under [31 U.S.C. §] 3730," the provision under which the federal suit now pending in Massachusetts was brought. The pertinent removal statute, 28 U.S.C. § 1441(b), authorizes the removal of a civil action of which the federal courts have original jurisdiction, but in a case such as this, a case in which jurisdiction is not based on a claim or right arising under federal law, only if none of the defendants is a citizen of the state in which the suit is brought, in this case Wisconsin—and that condition is not satisfied. And Wisconsin's suit is not a federal-question suit, because it is founded on an alleged violation of Wisconsin law, not of any federal law. Wisconsin has no federal claim; the basis on which it might have filed its suit in federal court, had the suit in Massachusetts been filed first, was the existence of a federal claim possessed not by the State of Wisconsin but by the plaintiffs in that suit. *In re Pharmaceutical Industry Average Wholesale Price, supra*, 509 F. Supp. 2d at 94.

The absence of removal jurisdiction over such a claim does not appear to have been a congressional oversight. Despite the wording of section 3732(b), Congress seems to have been creating a form of supplemental jurisdiction, as in the better-known 28 U.S.C. § 1367, rather than creating a right to bring a free-standing suit under state law when there was no diversity jurisdiction—let alone creating a right to remove such a case to federal court, years after it had been filed, because of the filing of a different case in a remote federal court. See *In re Pharmaceutical*

*Industry Average Wholesale Price*, *supra*, 509 F. Supp. 2d at 92-93, and cases cited there. Given 28 U.S.C. § 1367, one might wonder what work 31 U.S.C. § 3732(b) does. But section 1367 was enacted in 1990, four years after section 3732(b) was added to the False Claims Act. And while there was, even then, a federal common law of what is now called supplemental jurisdiction, consisting of the doctrines of pendent jurisdiction and ancillary jurisdiction, its application to pendent parties, as distinct from pendent claims, was quite limited. See *Finley v. United States*, 490 U.S. 545, 547-50 (1989); *Aldinger v. Howard*, 427 U.S. 1, 14-15 (1976).

A widely ramified fraud consisting of the making of false claims to public moneys, such as the fraud alleged in this case, in the similar cases pending in other state courts, and in the federal case in Massachusetts, may give rise to claims under both federal law—since if the federal government is defrauded, the fraud is a violation of federal law—and, if the state is defrauded, under state law, as in this case; often the state's only remedy will be under state law. There ought to be a mechanism that would enable all these claims to be consolidated in one litigation, and section 3732(b) is a partial answer to that need, as it confers federal jurisdiction over state law claims, regardless of diversity of citizenship, arising from the same fraudulent scheme that is being challenged in a suit under the federal false-claims statute. This would enable Wisconsin and the other states to intervene in the Massachusetts suit for the purpose of filing their state law claims against the defendants in that suit or against other participants in the fraud alleged there. *United States ex rel. Long v. SCS Business & Technical Institute, Inc.*, 173 F.3d 870, 880 (D.C. Cir. 1999) (dictum);

see also *Hawaii v. Abbott Laboratories, Inc.*, 469 F. Supp. 2d 842, 849-51 (D. Haw. 2006).

It is true that another subsection of the False Claims Act, 31 U.S.C. § 3730(b)(5), provides that "when a person brings an action under this subsection no person other than the [federal] Government may intervene or bring a related action based on the facts underlying the pending action." But the subsection that is referred to authorizes actions under the False Claims Act brought on behalf of the federal government. *Id.*, § 3730(b)(1). Those are qui tam actions, in which the plaintiff (called a "relator") is seeking a reward for obtaining a money judgment in the government's favor. Congress didn't want these bounty hunters piling into the first-filed suit and fighting over the division of the spoils, or, to the same end, bringing separate such suits. "When first enacted, the False Claims Act allowed relators to file suits and receive a share of the government's recovery even if they personally did nothing to help expose the alleged fraud . . . . '*Qui tam* litigation surged as opportunistic private litigants chased after generous cash bounties and, unhindered by any effective restrictions under the Act, often brought parasitic lawsuits copied from preexisting indictments or based upon congressional investigations.' In response, Congress amended the False Claims Act . . . 'to do away with [such] parasitic suits.' " *United States ex rel. LaCorte v. Smithkline Beecham Clinical Laboratories, Inc.*, 149 F.3d 227, 233 (3d Cir. 1998) (citations omitted); see also *United States ex rel. La Corte v. Wagner*, 185 F.3d 188, 191-92 (4th Cir. 1999). The State of Wisconsin is not a bounty hunter. It is not seeking a reward for obtaining a judgment in favor of someone else. It is suing to recover a loss inflicted on it by the defendants' fraud. Such a suit is not "related" to a

qui tam suit, within the meaning that the word bears in section 3730(b)(5) interpreted in light of the legislative purpose. Similarly, the bar to intervention is best interpreted, in light of that purpose, as a bar to intervention, in a qui tam suit, by other relators.

Dey argues that section 3732(b) would have allowed Wisconsin to bring its fraud suit in a federal district court because the suit is related to the federal suit pending in Massachusetts, and it points out that there are economies from trying related suits together. But if related suits are filed in different courts, there is no joint trial, though if the different courts are federal district courts rather than a federal district court and a state court the Judicial Panel on Multidistrict Litigation can order them consolidated for pretrial activity—but it is too late for that when a case is removed to federal court years after its initial filing in a state court. The benefit from allowing a suit not otherwise within the grant of judicial power to the federal judiciary in Article III of the Constitution to be filed in a federal district court merely because it is related to a federal suit filed years later and pending in another federal court is so exiguous as to draw in question the constitutionality of section 3732(b) if interpreted as Dey asks us to interpret it.

The procedure authorized by the statute cannot be analogized to bankruptcy proceedings, not only because they are in rem (where consolidation is highly desirable regardless of the legal basis of a claim against the res, or the citizenship of the interested parties), and not only because the Constitution authorizes Congress to create uniform bankruptcy laws, Art. I, § 8, cl. 4, but also because there is no consolidation of claims in a single proceeding in a single court on the view that Dey takes of the

scope of section 3732(b). On Dey's submission, a suit that has been proceeding for years in a state court is to be wrenched into federal court and start over. That would produce the opposite of the judicial economies that Dey claims from its interpretation of the statute.

Another reason the district court was correct to remand the case is that the qui tam complaint in the federal district court in Massachusetts is not an "amended pleading, motion, order or other paper" from which removability could first be ascertained. That language of section 1446(b) of the Judicial Code refers, as most cases hold (though there is a dearth of appellate rulings because orders remanding a case to a state court are, with an immaterial exception, unappealable, 28 U.S.C. § 1447(d)) to pleadings, etc., filed in the suit sought to be removed, not in some other suit ("amended" is a clue). *Hawaii v. Abbott Laboratories, Inc., supra*, 469 F. Supp. 2d at 848-49; *Dudley v. Putnam Investment Funds*, 472 F. Supp. 2d 1102, 1110-11 (S.D. Ill. 2007); *Morsani v. Major League Baseball*, 79 F. Supp. 2d 1331, 1333 (M.D. Fla. 1999); *Lozano v. GPE Controls*, 859 F. Supp. 1036, 1038 (S.D. Tex. 1994); *Johansen v. Employee Benefit Claims, Inc.*, 668 F. Supp. 1294, 1296-97 (D. Minn. 1987); see also *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71-73 (7th Cir. 1992); *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 969-70 (8th Cir. 2007); but see *Young v. Chubb Group of Ins. Cos.*, 295 F. Supp. 2d 806, 807-08 (N.D. Ohio 2003); *Davis v. Time Ins. Co.*, 698 F. Supp. 1317, 1321-23 (S.D. Miss. 1988); *Smith v. Burroughs Corp.*, 670 F. Supp. 740, 741 (E.D. Mich. 1987). (We left the question open in *In re Mutual Fund Market-Timing Litigation*, 495 F.3d 366 (7th Cir. 2007) (per curiam).)

If the State of Wisconsin filed a paper in its state court suit that revealed for the first time that the suit was

removable—maybe it decided to add a federal claim to its state law claims—then removable it would be, though more than 30 days had passed since the suit was filed. Otherwise a plaintiff could defeat removal by holding its federal claim in reserve when it filed its original suit and springing it on the defendant when the 30-day deadline for removing the case had expired. To allow a filing in another suit to restart the 30-day time limit would have a similar effect of belatedness by allowing removal years after a suit had been proceeding in a state court, because of the filing of another suit in another court. And that effect would not be justified by the need to thwart a strategic move—a plaintiff's concealing his federal claim until the 30-day deadline for removal had expired.

Dey points to two appellate decisions, *Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263, 266-68 (5th Cir. 2001), and *Doe v. American Red Cross*, 14 F.3d 196, 202-03 (3d Cir. 1993), that allow belated removal on the basis of an order in a different case. They were distinguished in the *Dahl* case, cited above; in both *Green* and *Doe*, the different case resolved a legal uncertainty concerning the existence of original federal jurisdiction. If the distinction seems too tenuous to be convincing, this does not invalidate the soundness of the ruling in *Dahl* that, when there is no such distinguishing feature (as there is not in this case), there can be no removal on the basis of an order or other document in another case.

All this said, because the issue of removability of a suit arguably brought within federal jurisdiction by section 3732(b) as a result of the subsequent filing of a suit under the False Claims Act has been squarely addressed in only one previous appellate opinion (*United States ex rel. Long v. SCS Business & Technical Institute, Inc.*, *supra*), and that

of another circuit—and in dictum, at that—we do not think that Dey can be faulted for having attempted to remove the suit the third time. Although a district court in its "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal," 28 U.S.C. § 1447(c), the Supreme Court has interpreted this language to mean that "absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The paucity of appellate authority gave Dey a reasonable basis for removing (we do not know what "objectively" is intended to add to "reasonable," since reasonableness in the law *is* an objective standard). See, e.g., *Lott v. Pfizer, Inc.*, 492 F.3d 789, 792-93 (7th Cir. 2007); *Gardner v. UICI*, 508 F.3d 559, 562 (9th Cir. 2007); compare *Chase Manhattan Mortgage Corp. v. Smith*, 507 F.3d 910, 914-15 (6th Cir. 2007). So we reverse the sanction order—the award to Wisconsin of the fees and costs that it incurred in getting the case remanded. We also deny Wisconsin's request that we award sanctions for the filing of a frivolous appeal. Fed. R. App. P. 38. Dey's appeal was not frivolous, since it has succeeded in knocking out the monetary award to Wisconsin.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*